SIXTH DIVISION
April 11, 2008

No. 1-06-2458

JILL CAYWOOD,                          )       Appeal from the
                                       )       Circuit Court
     Plaintiff-Appellant,              )       of Cook County.
                                       )
     v.                                )       No. 03 L 15528
                                       )
PAULL C. GOSSETT, and A.M.M. LTD., )
an Illinois Corporation,               )       The Honorable
                                       )       Abishi C. Cunningham,
     Defendants-Appellees.             )       Judge Presiding.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff Jill Caywood filed suit against defendants Paull C. Gossett, D.D.S., and A.M.M. Ltd., alleging dental malpractice. Defendants moved to dismiss plaintiff's complaint pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2006)), arguing that plaintiff failed to timely bring her suit within the two-year time period delineated in section 13-212(a) of the Code.  735 ILCS 5/13-212(a) (West 2006).  The circuit court found that plaintiff knew or should have known that defendants committed malpractice more than two years before filing her action and granted defendants' motion to dismiss the complaint as untimely filed.  For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

In January 1988, plaintiff and her family began treating with defendants for general dental care. In 1994, plaintiff complained to defendants about problems with teeth grinding. Defendant Gossett recommended that plaintiff floss regularly and rinse with saltwater. Defendants did not refer plaintiff to an oral surgeon or other specialist for evaluation. Plaintiff continued to treat with defendants for seven more years, during which, defendants provided plaintiff with regular exams, cleaning, bleaching, bonding and crowns.

On November 24, 2000, defendants examined and cleaned plaintiff's teeth. Defendants' records indicated that no abnormalities were noted. On March 2, 2001, plaintiff made an emergency appointment with defendants complaining of severe pain and swelling in her mouth and face. Plaintiff was diagnosed with a parotid sialolithiasis, a blocked salivary gland, and defendants prescribed an antibiotic and pain medication for her condition. Defendants continued to treat plaintiff's condition with antibiotics for a period of five months. Defendants' treatment initially relieved plaintiff's symptoms; however, the pain and swelling returned. Defendants neither referred nor re-evaluated plaintiff during that five-month period.

On August 18, 2001, plaintiff returned to defendants, again complaining of pain and swelling in her mouth. That same day, defendants removed tooth number 15, a molar, from the upper left side of plaintiff's mouth. Following the procedure, plaintiff

complained of increased pain and swelling in the area surrounding tooth number 15.  Defendants prescribed antibiotics and pain medication for plaintiff's deteriorating condition.  At the end of August 2001, plaintiff sought treatment from her physician, Dr. Gill, relative to the condition in the upper left side of her mouth.  Plaintiff complained to Dr. Gill that following defendants' extraction of tooth number 15, the pain and swelling around that area worsened.  Dr. Gill prescribed an antibiotic for plaintiff.

Sometime in August 2001, plaintiff began to insert foreign objects into her mouth in an attempt to relieve the inflamation and pain in her gums and jaw.  Plaintiff used pencil erasers, tweezers, a make-up brush, Sharpie brand marker caps and paper clips, in addition to her fingers.  In September 2001, plaintiff used a pair of tweezers to remove a bone or tooth fragment on her own from the area where tooth number 15 was extracted.  She testified in her deposition that the tooth fragment caused significant pain and irritation to her gums.  Plaintiff presented the fragment along with the tweezers used to remove it to defendants on September 12, 2001, during an appointment. Defendants prescribed pain medication for plaintiff in September, 2001.

On the same day plaintiff presented the tooth or bone fragment to defendants, she also visited Dr. Gill, who examined her mouth and ordered a CT scan.  The CT scan revealed that

plaintiff suffered from a sinus infection.  On September 14, Dr. Gill informed plaintiff that the sinus infection was caused by defendants' extraction of tooth number 15 and prescribed antibiotics for her treatment.  On October 3, 2001, Dr. Gill admitted plaintiff to Hinsdale Hospital as a result of the infection and her pain and swelling.  An examination of plaintiff revealed that a fistula, an opening between two cavities, developed between plaintiff's mouth and sinus cavity.  Bacteria from plaintiff's mouth entered into her sinus cavity through the fistula causing a severe infection in her upper left jawbone area and severe inflamation and pain.

On October 8, 2001, plaintiff underwent an endoscopic sinus surgery performed by Dr. Cynthia Go, an otolaryngologist.  The endoscopic procedure was performed to alleviate the swelling and pain and treat the infection in plaintiff's mouth.  A second surgery was performed on October 10, 2001, to insert a catheter to administer antibiotics intravenously to treat the sinus infection.  Following the surgeries, plaintiff remained at Hinsdale Hospital for two weeks and was discharged.  On October 29, 2001, plaintiff was readmitted to Hinsdale Hospital because she complained of weakness and an altered mental state.  Plaintiff's medications were regulated and she was released after one week.  Three days following her discharge, she was re-admitted to repair a broken catheter line.  On November 9, 2001, plaintiff was diagnosed with a severe sinus infection, upper left

4

jawbone infection, and chronic facial pain syndrome.

On November 19, 2001, Dr. Go and Dr. Gregory Stevens performed a third surgery on plaintiff to repair the opening that allowed bacteria to enter plaintiff's sinus cavity from her mouth in the area of tooth number 15. While performing the surgery, Drs. Go and Stevens determined that tooth number 14 was also severely infected and they extracted the tooth. Following the surgeries, plaintiff returned to defendants for a general examination on December 11, 2001. Plaintiff could not recall if she was treated by defendants on that day.

On or around February 26, 2002, plaintiff commenced treatment with Dr. Ronald Schefdore. Dr. Schefdore cleaned plaintiff's teeth and created a mouth guard for her to wear at night to prevent her from grinding her teeth. Dr. Schefdore referred plaintiff to several specialists for treatment including a root canal specialist, gum specialist, oral surgeon and dentists at the University of Illinois at Chicago.

On December 11, 2003, plaintiff filed this lawsuit against defendants alleging that defendants failed to perform adequate and thorough examinations to diagnose temporomandibular disorder (TMD) and properly treat or refer plaintiff for treatment of TMD by a specialist. It was further alleged that defendants: failed to diagnose and treat plaintiff's gum disease, tooth decay, abscesses and bone loss; improperly performed the extraction of tooth number 15; misdiagnosed plaintiff's condition as a blocked

salivary gland; and failed to heed plaintiff's continued complaints of pain and discomfort following the extraction of tooth number 15. Defendants denied any negligence and discovery commenced.

On February 8, 2006, defendants filed their motion to dismiss pursuant to section 2-619(a)(5) of the Code. 735 ILCS 5/2-619(a)(5) (West 2006). Defendants argued that plaintiff failed to file her complaint prior to the expiration of the statute of limitations provided in section 13-212(a) of the Code. 735 ILCS 5/13-212(a) (West 2006). Specifically, defendants assert that plaintiff knew, or should have known, as early as October 3, 2001, and no later than November 19, 2001, that defendants negligently misdiagnosed her TMD and negligently treated her symptoms. Plaintiff responded arguing that defendants' continuous treatment until December 11, 2001, barred dismissal under the continuous treatment doctrine and that her complaint was filed within two years of terminating her treatment with defendants.

The circuit court granted defendants' motion and dismissed plaintiff's complaint with prejudice. The circuit court held that "plaintiff's own deposition demonstrates that she knew or should have known of her injury and its wrongful cause prior to November 19, 2001." The court based its decision on plaintiff's testimony that she knew that the sinus infection, for which she was admitted to Hinsdale Hospital, was caused by defendants'

6

treatment. The circuit court further rejected plaintiff's contention that the continuing course of negligent treatment doctrine barred the court from dismissing her complaint because defendants treated her on December 11, 2001. The circuit court held that the continuing course of negligent treatment doctrine did not apply because plaintiff did not allege in her complaint or present any evidence that defendants' treatment was negligent on December 11, 2001.

Plaintiff filed a motion to reconsider the circuit court's order dismissing her complaint contending that the court misapplied the discovery rule to facts of this case. Plaintiff argued that her statements did not equate to an admission that she knew her injury was wrongfully caused but, rather, that the negative results were due to the prior treatment. The circuit court rejected this assertion, ruling that under the circumstances, a reasonable person would have been put on inquiry that actionable conduct may have accrued. The circuit court was "unwilling to believe that after all of [the] problems and negative results and armed with the knowledge that the dentist's removal of a tooth caused a sinus infection that a reasonable person would not have sufficient information to investigate whether Dr. Gossett's care fell below the standard of care." Plaintiff filed this timely appeal.

ANALYSIS

I. STANDARD OF REVIEW

1-06-2458

Defendants' motion to dismiss plaintiff's complaint was brought pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2006)), which provides for the dismissal of an action that was not commenced within the time limited by law. When ruling on a section 2-619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. In re Chicago Flood Litigation, 176 Ill. 2d 179, 189 (1997); In re Parentage of M.J., 203 Ill. 2d 526, 533 (2003). The purpose of a motion to dismiss under section 2-619 of the Code of Civil Procedure is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a jury trial. Zedella v. Gibson, 165 Ill. 2d 181, 185 (1995). A motion under section 2-619 of the Code admits the legal sufficiency of the well-pleaded factual allegations of a complaint (Neppl v. Murphy, 316 Ill. App. 3d 581, 584 (2000)); however, it allows for dismissal when the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim. Builders Bank v. Barry Finkel & Associates, 339 Ill. App. 3d 1, 6 (2003); 735 ILCS 5/2-619(a)(9) (West 2006). In ruling on a motion to dismiss under section 2-619, the trial court may consider pleadings, depositions, and affidavits.

The circuit court should deny a motion to dismiss brought pursuant to the discovery rule and section 13-212(a) of the Code

8

unless it can say, as a matter of law, that plaintiff knew or should have known of her injury and the wrongful causation more than two years before filing the instant lawsuit. Tuchowski v. Rochford, 368 Ill. App. 3d 441, 443-44 (2006); 735 ILCS 5/13-212 (West 2006). The standard of review to be applied by this court to the circuit court's dismissal of plaintiff's complaint pursuant to section 2-619(a)(5) of the Code is de novo. Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago, 213 Ill. 2d 1, 6 (2004).

II. THE CIRCUIT COURT'S DISMISSAL OF PLAINTIFF'S COMPLAINT

Plaintiff assigns error to the circuit court because, in her view, the question of when she discovered that her injury was a result of defendants' malpractice is an issue of fact precluding dismissal. Plaintiff offers the following arguments in support of her proposition that the circuit court's dismissal was error: the circuit court misapplied the second prong of the discovery rule by determining that plaintiff must have known that her injury was a result of malpractice, thereby invading the province of the jury; the circuit court improperly determined that November 19, 2001, was the date of discovery; and plaintiff's testimony does not show that she was aware of defendants' malpractice but presents a question of fact precluding dismissal.

Section 13-212 of the Code provides:

"[N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly

licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."  735 ILCS 5/13-212(a) (West 2006).

The discovery rule is specifically provided for in section 13-212 of the Code and it postpones the commencement of the limitations period until a plaintiff learns or reasonably should have learned of her injury and knows or reasonably should have known that it was wrongfully caused. Blair v. Blondis, 160 Ill. App. 3d 184, 184-88 (1987).  However, "the term 'wrongfully caused', does not mean knowledge by plaintiff of a specific defendant's negligent act or knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses 'sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' "  Hoffman v. Orthopedic

<u>Systems, Inc.</u>, 327 Ill. App. 3d 1004, 1011 (2002), quoting <u>Knox College v. Celotex Corp.</u>, 88 Ill. 2d 407, 416 (1981); <u>Moore v. A.H. Robins Co.</u>, 167 Ill. App. 3d 19, 23 (1988). Once a plaintiff is on inquiry to determine whether actionable conduct is involved, the burden falls upon that plaintiff to inquire further as to the existence of a cause of action. <u>Hoffman</u>, 327 Ill. App. 3d at 1011, citing <u>Witherell v. Weimer</u>, 85 Ill. 2d 146, 156 (1981).

In our view, plaintiff's testimony during her deposition shows that she knew that her injury was caused by defendants and that she had more than sufficient information to put her on inquiry that actionable conduct occurred prior to November 19, 2001. Plaintiff gave the following testimony in her deposition:

"MR. GREEN: [Counsel for Defendants:] Q. So is it your testimony that as of September 14, 2001, you were aware that you had a sinus infection from the extraction of Tooth No. 15?

A. My understanding was yes.

* * *

Q. What was your condition upon admission on October 3rd, 2001, to Hinsdale Hospital?

A. I was - - my mouth was infected and I was running a fever. ***

Q. What was your understanding as of October 3rd, 2001, to the cause of your medical and dental condition which you

11

described as an infection in your mouth?

A. My understanding was that I had an infection in my mouth and they needed to - - Dr. Gill then saw me and admitted me to the hospital.

Q. As of October 3rd, what was your understanding as to the cause of your mouth infection?

* * *

A. I believed it to be tooth 14.

Q. 14?

A. The tooth 14 - - the 14th tooth, the one that was still intact. I believe it was that because that was the one that was very sore and infected.

Q. So your problems as of October 3rd, 2001, at least to your understanding from your consultation with your doctors, was that it had nothing to do with Dr. Gossett's extraction of Tooth No. 15 a month and a half earlier; is that correct?

A. No. That's not true.

Q. *** Was it your understanding that as of October 3rd, 2001, when you were admitted to Hinsdale Hospital, that your medical condition was the result of Dr. Gossett's extraction of Tooth No. 15?

A. Yes. And how long he kept me on - - yes. I believe he kept me on antibiotics for a period of six months at the time I went to the hospital.

Q. Did you - - as of October 3rd, 2001, did you feel in

your mind that somehow Dr. Gossett had not been treating you properly?

A. Say that date again?

Q. When you were admitted on October 3rd, 2001, to Hinsdale Hospital, was it your understanding at that time that you had not been treated properly by Dr. Gossett?

A. Um --

Q. Did you feel at that point in time that somehow he had done something that had not been correct?

A. Well, when he took out No. 15 and it literally cracked in half, and he took the rest of it out, and he looked a little surprised because - - he was surprised.  And I came back and asked him - - okay - - bottom line - - ask me one more time, I'm so tired.

Q. As of October 3rd, when you were admitted to Hinsdale Hospital for you mouth infection and problems with infection of your sinuses, was it because of Dr. Gossett's treatment?

A. Yes."

Plaintiff's testimony further revealed that she consulted with Dr. Gill on August 18, 2001, when her condition worsened following defendants' treatment and that Dr. Gill told her that she developed an infection in and around the area where Dr. Gossett extracted tooth number 15.  When asked about why she consulted with Dr. Gill instead of going to Dr. Gossett, plaintiff testified "[m]y perspective on it was that that tooth,

[number 15] was in there for a good period of time and I couldn't understand why [Dr. Gossett] would allow a tooth to be in there infected for that long a period of time." She further testified that following Dr. Gossett's extraction of tooth number 15, she did not improve, she knew there was a problem, her pain and inflamation became worse and the medication was not effective. Moreover, she was told that an opening between her mouth and sinus developed where Dr. Gossett extracted tooth number 15 and that it had to be repaired with oral surgery to prevent further infections from occurring.

After reviewing the record presented to the circuit court in this case, we are also of the view that the evidence supports the proposition that plaintiff knew or, at minimum, should have known that defendants' care or lack of care was actionable before November 19, 2001. Thus, we hold that plaintiff's complaint was untimely filed and the circuit court properly dismissed it pursuant to section 2-619(a)(5) of the Code.

III. CONTINUOUS COURSE OF NEGLIGENT TREATMENT

Plaintiff contends that the limitations period should have commenced on December 11, 2001, based on a continuing course of treatment by defendants. See generally Cunningham v. Huffman, 154 Ill. 2d 398 (1993). In Cunningham, our supreme court specifically rejected the "continuous course of treatment" exception to the statutes of limitations and repose periods contained in section 13-212 of the Code and held that the

1-06-2458

Illinois statutory scheme allows for the limitations and repose periods to be tolled by plaintiff based on a continuing <u>negligent</u> course of treatment for a specific condition. <u>Cunningham</u>, 154 Ill. 2d at 404-06. To prevail under a continuing <u>negligent</u> course of treatment for a specific condition, a plaintiff must demonstrate: "(1) that there was a continuous and unbroken course of <u>negligent</u> treatment, and (2) that the treatment was so related as to constitute one continuing wrong." <u>Cunningham</u>, 154 Ill. 2d at 406.

Plaintiff's claim that the circuit court erred in rejecting her continuous course of negligent treatment is without merit. Plaintiff does not allege that the treatment received on December 11, 2001, was negligent. In fact, plaintiff's complaint merely alleged that Dr. Gossett examined her last on December 11, 2001, and in her deposition, she testified that she could not recall what, if any, treatment was provided on that day. In addition, the cases that plaintiff relies upon are distinguishable from the facts in the instant case.

In <u>Jacobson v. Natonson</u>, 164 Ill. App. 3d 126 (1987), the circuit court barred evidence arising from treatment that occurred more than four years prior to discovery of the defendant's negligence. <u>Jacobson</u>, 164 Ill. App. 3d at 130. This court held that the circuit court erred in applying section 13-212 of the Code as a rule governing the admission of evidence and that the statute of limitations and repose operated as a bar to

15

1-06-2458

filing a claim that was discovered more than four years prior to bringing suit. Jacobson, 164 Ill. App. 3d at 130. Furthermore, the plaintiff in Jacobson alleged that the defendant engaged in a continuing course of negligent treatment, misrepresented the seriousness of her disease and discouraged her from seeing other specialists or getting a second opinion. Jacobson, 164 Ill. App. 3d at 128. Here, plaintiff saw several doctors and specialists relative to her condition, some of whom actually told plaintiff that defendants' extraction of tooth number 15 caused the infection and fistula that required three surgeries. Moreover, contrary to the circumstances in Jacobson, Follis v. Watkins and Paske v. Green, the evidence in this case and plaintiff's testimony show that she knew about defendants' negligent treatment. Follis v. Watkins, 367 Ill. App. 3d 548, 558 (2006) (holding that a question of fact was raised by a plaintiff who never saw any other dentist during the relevant time period, alleged that entire course of care by defendant was negligent, learned first from a new dentist in a different state that her mouth was in a state of total disrepair and attributed her injury to improper dental care by the defendant); Paske v. Green, 142 Ill. App. 3d 367 (1986) (finding that evidence supported claim that plaintiff was not aware of injury until treatment by another dentist even though she was dissatisfied with the results and comfort of her treatment). In our view, based on the evidence in the record, there is no question of fact as to when plaintiff

16

knew that defendants' rendered negligent care.

IV. ISSUES RAISED FOR THE FIRST TIME IN MOTION TO RECONSIDER

Plaintiff argued, for the first time, in her motion for reconsideration of the circuit court's dismissal of her lawsuit, that she suffered from mental incapacitation and was unable to appreciate that she had been injured by defendants' wrongful treatment.  Plaintiff argues on appeal that the circuit court erred by failing to address these arguments or Joyce Wixon's affidavit supporting this theory in its ruling on plaintiff's motion for reconsideration.  We disagree.

The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence which was not available at the time of the hearing, changes in the law or errors of the court's previous application to existing law. American National Trust Co. v. Kentucky Fried Chicken of Southern California, Inc., 308 Ill. App. 3d 106, 120 (1999).  Here, plaintiff did not explain why the mental incapacitation argument or Wixon's affidavit was not brought prior to her motion for reconsideration.  We have previously held that circuit courts "should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. *** [T]he interests of finality and efficiency require that the [circuit] courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." (Emphasis in original.)  Gardner v. Navistar

17

1-06-2458

International Transportation Corp., 213 Ill. App. 3d 242, 248-49 (1991).  In addition, arguments raised for the first time in a motion for reconsideration in the circuit court are waived on appeal.  Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo, 357 Ill. App. 3d 122, 137 (2005).  Because plaintiff failed to raise this argument in her response to defendants' motion to dismiss, she waived her right to assert this issue.  See also Holzer v. Motorola Lighting, Inc., 295 Ill. App. 3d 963, 978 (1998) (argument raised for the first time in a motion for reconsideration is waived).

Waiver aside, even if the circuit court or this court were to consider plaintiff's mental incapacitation, plaintiff's claim is supported only by the affidavit of her friend, Wixon, who is an attorney.  No medical evidence or affidavits from a doctor or other medical professional, were offered to support a finding of mental incapacity in the circuit court or this court.  735 ILCS 5/13-212(c) (West 2006); see Bloom v. Braun, 317 Ill. App. 3d 720, 730-31 (2000) (holding that to toll the statute of limitations under section 13-212 of the Code, "a person must be entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs").  Plaintiff did not testify that she was unable to understand or communicate relative to her care and treatment and she has offered nothing to support her contention that she was suffering from a disability sufficient to

18

1-06-2458

toll the statute of limitations pursuant to section 13-212(c) of the Code.

### V. CONCLUSION

For the foregoing reasons, we hold that plaintiff knew or should have known of her injury before the third surgery, which occurred on November 19, 2001, the continuing course of negligent treatment exception does not apply under the circumstances of this case and all matters raised for the first time in plaintiff's motion for consideration were properly disregarded by the circuit court and waived by plaintiff for purposes of appeal. Accordingly, the judgement of the circuit court is affirmed.

Affirmed.

McBRIDE, P.J., and JOSEPH GORDON, J., concur.

19

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

**TITLE**
**of Case**

JILL CAYWOOD,

     Plaintiff-Appellant,

     v.

PAULL C. GOSSETT, and A.M.M. LTD., an Illinois Corporation,

     Defendants-Appellees.

**Docket No.**     1-06-2458

**COURT**     Appellate Court of Illinois
First District, Sixth Division

**Opinion**
**Filed**     April 11, 2008

**JUSTICES**     JUSTICE O'MALLEY delivered the opinion of the court:
McBRIDE, P.J. and JOSEPH GORDON, J. concur.

**Appeal's**
**Origination**     Appeal from the Circuit Court of Cook County.
The Hon. Abishi C. Cunningham Judge Presiding.

**Counsel for**
**APPELLANTS**     For Appellants, Grasso Bass & Williams, P.C., Gary A. Grasso and Adam R. Bowers, Burr Ridge, IL.

**Counsel for**
**APPELLEES**     For Appellees, Querrey & Harrow, LTD., David E. Neumeister, Jennifer L. Medenwald, John M. Green and Sylvia Karalekas, Chicago, IL.