# Illinois Official Reports

## Appellate Court

---

### *Brummel v. Grossman*, 2018 IL App (1st) 162540

---

| | |
|---|---|
| Appellate Court Caption | MARIA BRUMMEL, Executor of the Estate of Bruce Brummel, Deceased, Plaintiff-Appellant, v. RICHARD D. GROSSMAN; AGNES E. GROSSMAN; LAW OFFICES OF RICHARD D. GROSSMAN; RICHARD C. DANIELS; DANIELS, LONG & PINSEL, LLC; JASON S. MARKS; and NOONAN, PERILLO, POLENZANI & MARKS, LTD., Defendants (Richard C. Daniels; Daniels, Long & Pinsel, LLC; Jason S. Marks; and Noonan, Perillo, Polenzani & Marks, Ltd., Defendants-Appellees). |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-2540 |
| Filed<br>Rehearing denied | March 29, 2018<br>May 2, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-13363; the Hon. John P. Callahan Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Julie A. Boynton and Donald L. Johnson, of Yorkville, for appellant.<br><br>Joseph R. Marconi, David M. Macksey, and Brian C. Langs, of Johnson & Bell, Ltd., of Chicago, for appellees Richard C. Daniels and Daniels, Long & Pinsel, LLC. |

Daniel F. Konicek and Michael J. Corsi, of Konicek & Dillon, P.C., of Geneva, for other appellees.

Panel          JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1         The instant appeal arises from the dismissal of plaintiff Maria Brummel's amended complaint for legal malpractice filed against defendants, attorney Richard C. Daniels and the law firm of Daniels, Long & Pinsel, LLC (collectively, Daniels defendants), and attorney Jason S. Marks and the law firm of Noonan, Perillo, Polenzani & Marks, Ltd. (collectively, Marks defendants).[1] The lawsuit, originally filed by Bruce Brummel[2] (decedent) on December 30, 2014, alleged legal malpractice against defendants for negligently representing him during a workers' compensation or occupational diseases case against his employer, Nicor Gas, which settled on October 25, 2011.[3] The trial court ultimately dismissed the legal malpractice complaint with prejudice pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2014)), finding that the complaint was not filed within the Code's two-year statute of limitations governing legal malpractice actions (735 ILCS 5/13-214.3 (West 2014)). Plaintiff appeals, arguing that the statute of limitations was tolled since the decedent filed his complaint within two years of discovering his injury, and that defendants should be estopped from asserting the statute of limitations defense because the decedent reasonably relied on defendants' misrepresentations, which delayed his discovery of injury. For the following reasons, we affirm the judgment of the trial court.

---

[1]Plaintiff also alleged a separate count of legal malpractice against attorneys Richard D. Grossman and Agnes E. Grossman and the Law Offices of Richard D. Grossman (collectively, Grossman defendants) for their handling of a separate related lawsuit, but that count is not at issue in this appeal.

[2]Bruce Brummel passed away on June 3, 2015, during the pendency of his legal malpractice lawsuit. The trial court substituted Maria Brummel, the executor of his estate, as plaintiff on October 6, 2015.

[3]The complaint filed in this matter refers to the action as a workers' compensation claim. On claims filed at the Illinois Workers' Compensation Commission, the employees have the option to file their claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2006)) or the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2006)) or both. The application for adjustment of claim form filed in this matter is not contained in the record of this case, so we do not know what act the decedent filed under. The briefs filed in this matter state that the claim that was filed here was under the Workers' Compensation Act, but we will assume it was under the Occupation Disease Act or both.

BACKGROUND

¶ 3       The decedent's employer Nicor Gas (Nicor) is a natural gas distribution company. The decedent began working for Nicor in December 1980 when he was 18 years old, and he remained with the company in various positions[4] for over 22 years. In 2001, the decedent and some of his coworkers at Nicor began to feel ill with symptoms of vomiting, diarrhea, abdominal pain, weakness, and fatigue. The decedent consulted a physician who opined that the decedent's symptoms were caused by ingestion from chemicals. From 2001 to 2003, the decedent, as well as other employees, informed Nicor about his concerns that its drinking water was contaminated, but Nicor did not take any action to investigate or remedy the problem. The decedent also reported his concerns to the Occupational Safety and Health Administration in 2001 after Nicor did not take action. The decedent conducted his own investigation designed to discover the source of the chemicals at the Nicor facility where he worked, and he found that the drinking water in the break room connected to the flush line of the boiler, which allowed toxins to be emitted from the boiler into the drinking water consumed by Nicor employees. The decedent informed his union about the contaminated drinking water, but the union also ignored his requests for help. In late 2002, the decedent reported his findings concerning the connection between the boiler and the drinking water to the Occupational Safety and Health Administration for the second time, and he reported his findings to the City of Aurora, the Kane County Health Department, and the Illinois Department of Public Health. The decedent's health continued to deteriorate, and he was forced to take a medical leave of absence on October 6, 2003.

¶ 4       On October 14, 2003, the City of Aurora's emergency response team and head plumbing inspector, Robert Thompson, inspected the plumbing in the boiler room and closed the facility. The inspection revealed that the drinking water was contaminated with methylene chloride and/or dichloro methane. Nicor later resolved the problem by installing backflow protection devices, which conformed the plumbing to city, state, and federal water safety regulations.

¶ 5       During his career at Nicor, the decedent received regular raises and was entitled to various employment benefits, and at the time he began his leave of absence, he was earning over $100,000 per year in wages, with an average weekly wage of $1800. From October 2003 to January 2004, the decedent applied for and received 11 weeks of extended benefit account payments from an insurance benefit program he had purchased at Nicor to cover sick leave absences. Although the decedent was eligible for extended benefit account payments for 39 weeks, Nicor terminated the decedent's benefits after only 11 weeks of payments. As a result of the loss of income, the decedent did not have enough money to pay for his medical treatment and family expenses. Nicor officially terminated the decedent's employment on April 15, 2004. During this period of absence, the decedent received no temporary total disability payments from Nicor under the Workers' Compensation Act or Workers' Occupational Diseases Act, nor did Nicor pay for any of his medical expenses.

¶ 6       In late 2005 or early 2006, the decedent discussed his health and work issues with defendant attorney Richard C. Daniels, a friend that the decedent had met through the Shriner's, and defendant Daniels agreed to represent decedent in a workers' compensation and occupational diseases case and an action against Nicor for retaliatory discharge and violating the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)). The decedent and defendant

---

[4]The decedent's job titles do not appear in the record on appeal.

Daniels entered into a retainer agreement that defendant Daniels would receive a contingency fee of one-third of any recovery for extended benefits and that decedent would pay all costs. Defendant Daniels also agreed to be paid his fee on the workers' compensation and/or occupational diseases action in accordance with the provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act. After the decedent retained defendant Daniels as counsel, defendant Daniels recommended that the decedent also retain defendant attorney Jason S. Marks as cocounsel for the Workers' Compensation Act and Workers' Occupational Diseases Act claim since defendant Marks represented that he had experience in handling those cases. Defendant Marks agreed, and defendants Daniels and Marks entered into a fee sharing agreement, and the decedent agreed.

¶ 7    In 2006, defendant Marks filed a workers' compensation and/or occupational diseases claim against Nicor on the decedent's behalf. As noted, during the pendency of this case, the decedent never received any temporary total disability benefits, and no petition under section 19(b-1) of the Workers' Compensation Act was ever filed on his behalf (820 ILCS 305/19(b-1) (West 2006)).

¶ 8    Five years later, while the workers' compensation claim was still pending, Nicor offered the decedent a lump sum settlement of $125,000, and decedent accepted it on October 20, 2011. Defendant attorney had made a demand for only $150,000 to settle the matter. An arbitrator approved the settlement five days later on October 25, 2011.

¶ 9    On December 30, 2014, the decedent filed the instant lawsuit against the Daniels and Marks defendants for legal malpractice, claiming that they failed to file a section 19(b-1) petition to obtain temporary total disability payments for decedent during the pendency of his Workers' Compensation Act and/or Workers' Occupational Diseases Act case and that defendants Daniels and Marks induced him into accepting an "unreasonably low" $125,000 settlement offer from Nicor. The lawsuit also alleged two counts against the Daniels defendants and the Grossman defendants for their handling of the decedent's related civil lawsuit against Nicor for retaliatory discharge and violating the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)), and one count for defendant Daniels's negligent referral of the Marks and Grossman defendants. However, those counts are not at issue in this appeal.

¶ 10    In the complaint, the decedent claimed that he spoke to defendants Daniels and Marks multiple times and asked them about the status of his Workers' Compensation Act and/or Workers' Occupational Diseases Act case and lack of temporary total disability benefits, and wanted to know why the matter was moving so slowly. Decedent alleged that defendant Daniels reassured him that "everything was fine, that the matter took time, and that Defendant Marks was handling the matter competently," and defendant Marks reassured the decedent that the case was progressing and that he would receive compensation for his injuries. The complaint alleged that, "for unknown reasons," neither defendant Marks nor defendant Daniels sought temporary total disability benefits during the pendency of the decedent's workers' compensation and/or occupational diseases case even though temporary total disability benefits "were available and [the decedent] was entitled" to receive them. As a result, the complaint alleged that the Daniels and Marks defendants committed legal malpractice for failing to seek temporary total disability benefits for the decedent while his case was pending.

¶ 11    Concerning the settlement of the underlying workers' compensation case, the decedent alleged in the complaint that he initially thought Nicor's $125,000 settlement offer was "unreasonably low" prior to accepting, but defendant Daniels reassured him that the amount

was the best offer that he could receive and that it was a good settlement amount. The decedent further claimed that, "[d]ue to continued assurances" made by defendants Daniels and Marks, he did not know that the settlement amount "was far below what he should have received in compensation" until he consulted with a new attorney in 2014.

¶ 12     The decedent passed away on June 3, 2015, while his lawsuit was still pending. The trial court substituted Maria Brummel, the executor of his estate, as plaintiff on October 6, 2015.

¶ 13     On December 4, 2015, the Marks defendants filed a section 2-619(a)(5) motion to dismiss the complaint as untimely pursuant to the Code's two-year statute of limitations governing legal malpractice actions. 735 ILCS 5/2-619(a)(5), 13-214.3 (West 2014). The motion to dismiss argued that over three years had elapsed between the settlement of the underlying workers' compensation and/or occupational diseases case and the filing of the decedent's instant legal malpractice lawsuit and that the decedent did not show any affirmative acts or misrepresentations by defendants after the settlement to prevent the decedent's discovery of the cause of action. The motion to dismiss also argued that the decedent was aware of the potential for temporary total disability benefits prior to the settlement and that the settlement order, which the decedent signed, stated that the settlement was a complete and final resolution to his Workers' Compensation Act and Workers' Occupational Diseases Act case, including any unpaid temporary total disability payments. The Daniels defendants later joined the motion to dismiss. The decedent's response to the motion to dismiss does not appear in the record on appeal.

¶ 14     On April 5, 2016, the trial court held a hearing on defendants' motion to dismiss. The trial court pointed to paragraph 94 of the complaint, which read, "Due to continued assurances made by Defendant Daniels and Defendant Marks, [the decedent] did not learn until 2014 that his worker's compensation and occupational diseases settlement amount was far below what he should have received." The trial court told plaintiff's counsel, "I don't know what you're telling me in paragraph 94" and indicated that it assumed that paragraph 94 was included to establish the discovery rule, which would toll the statute of limitations. The trial court told plaintiff's counsel that "I don't even know what they're saying the assurances are, quite frankly," and plaintiff's counsel responded that the assurances referenced in paragraph 94 of the complaint were the assurances that were given to the decedent at the time of the settlement, which the trial court understood to be the typical "assurances that are often given in many cases, [i]t's the best we're going to get; you could do worse at trial; there's a lot of uncertainty." At the conclusion of the hearing, the trial court considered the motion to dismiss as though it had been submitted pursuant to section 2-615 as a motion for failure to state a cause of action (735 ILCS 5/2-615 (West 2014)), rather than section 2-619 (735 ILCS 5/2-619 (West 2014)), and granted the motion without prejudice, providing plaintiff a "final opportunity to amend" the complaint with sufficient information concerning "[w]hat are these assurances, exactly what fact or facts." In a separate order on April 13, 2016, the trial court granted plaintiff leave to file an amended complaint concerning the legal malpractice claims against the Daniels and Marks defendants only. The order further stated that plaintiff was not given leave to amend the pleadings concerning the Daniels and Grossman defendants' handling of the decedent's separate whistleblower lawsuit. However, that portion of the order is not part of this appeal.

¶ 15     On April 22, 2016, plaintiff filed an amended complaint in the instant lawsuit. In the amended complaint, plaintiff claimed that, although the Workers' Compensation Act and

Workers' Occupational Diseases Act provide for temporary total disability benefits, defendants told the decedent that he was not eligible to receive payments without explaining why. Plaintiff also claimed that some of the decedent's Nicor coworkers told him that they were not receiving temporary total disability benefits despite applying for them while their cases were pending. Plaintiff further claimed that the decedent did not obtain temporary total disability benefits because the Daniels and Marks defendants "failed to timely obtain or develop medical support of his medical condition so an interim payment claim could be successfully made" and that, prior to the settlement, defendants told the decedent that "he did not need to worry about [temporary total disability benefits] payments because he would be compensated for work injuries in the final resolution of the case." As a result, the amended complaint alleged legal malpractice against the Daniels and Marks defendants for failing to timely obtain or develop the medical support evidence needed to seek temporary total disability benefits.

¶ 16 Plaintiff also argued that the settlement was insufficient since the amount of money the decedent settled for was less than what he should have received. Plaintiff claimed that the decedent knew that, based on his own experience and what some his coworkers had told him, Nicor had a practice of prolonging workers' compensation or occupational diseases cases for extended periods of time to pressure employees to settle for less money than they should have received. Plaintiff also claimed that some of the decedent's coworkers told him that Nicor offered them settlement amounts that were similar to or less than the $125,000 settlement offer to the decedent and that they also had waited years to settle their cases. The amended complaint, however, removed the allegation that the decedent initially considered the $125,000 settlement offer "unreasonably low." Plaintiff claimed that both defendants Daniels and Marks told the decedent that the settlement offer from Nicor was good and urged him to accept the offer since Nicor was not willing to pay more. The amended complaint also alleged that defendant Daniels, but not defendant Marks, assured the decedent that, in addition to the settlement money he received, he would also "still be able to make a recovery against [Nicor] in his retaliatory discharge/whistleblower case" and that, "on multiple occasions" after the settlement but before the whistleblower case was dismissed, defendant Daniels assured the decedent that "he would be receiving additional funds to the funds he received in the worker's compensation [and occupational diseases] action to compensate him for his injuries." Plaintiff argued that the decedent believed defendant Daniels's "assurances" after the settlement of additional compensation and "believed that [defendant] Daniels was protecting his interests in both litigations."

¶ 17 At a hearing on defendants' motion to dismiss on August 25, 2016, the trial court determined that, "whether you're an attorney or not an attorney, [the settlement agreement]'s pretty clear in terms of what it includes and what it doesn't include." The trial court found that, considering the amount of money that the decedent had been making per year at Nicor and the eight years he was out of work, "[the decedent] knew or should have known at the time of the entry of original [settlement] order *** that something was a miss [*sic*]." As a result, the trial court granted defendants' motion to dismiss, and plaintiff now appeals.

¶ 18 ANALYSIS

¶ 19 On appeal, plaintiff claims that the trial court erred when it dismissed decedent's complaint, arguing (1) that the complaint was not untimely because the statute of limitations

was tolled since the decedent filed his original complaint within two years of discovering his injury, and (2) that defendants should be estopped from asserting the statute of limitations because the decedent reasonably relied on defendants' misrepresentations, which delayed his discovery of his injury. For the following reasons, we affirm the judgment of the trial court.

¶ 20                                I. Statute of Limitations

¶ 21    Plaintiff first argues that, although the original complaint was not filed within two years of the decedent's injury, the complaint was timely filed since the decedent did not discover his injury until he consulted a new attorney in 2014, approximately three years after the settlement. Defendants argue that the facts indicate that the decedent knew, or should have known, that his settlement was insufficient at the time of the settlement agreement, and that the statute of limitations was not tolled as a result. For the following reasons, we affirm the trial court's dismissal of plaintiff's first amended complaint.

¶ 22    Section 2-619(a)(5) provides that a defendant may file a motion for dismissal when an action has not been commenced within the time limited by law (735 ILCS 5/ 2-619(a)(5) (West 2014)). Section 2-619 is designed to afford litigants a means to dispose of issues of law and easily proven issues of fact at the onset of litigation. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 891 (2005). A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). The failure to act within the time provided by law is an affirmative matter, and "[w]here the affirmative matter asserted is apparent on the face of a pleading, no affidavit is required to support a section 2-619 motion." *Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶¶ 23-24 (citing *Sierens v. Clausen*, 60 Ill. 2d 585, 588 (1975)). "[I]n ruling on a section 2-619 motion, where the facts are undisputed and only one conclusion is evident, the court may determine the date of the commencement of the statute of limitations as a matter of law." *Goran v. Glieberman*, 276 Ill. App. 3d 590, 596 (1995) (citing *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85 (1995)).

¶ 23    When ruling on a section 2-619 motion to dismiss, a trial court must interpret all pleadings, affidavits, and other supporting documents in the light most favorable to the nonmoving party. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 128 (2008). The defendant has the initial burden of proving the affirmative defense relied upon in its motion to dismiss. *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 12 (1989) (explaining that a defendant raising a statute of limitations defense in a motion to dismiss bears the initial burden of demonstrating that the action in question was not commenced within the applicable limitation period). Once the defendant, however, has met this burden, it becomes incumbent upon the plaintiff to set forth facts sufficient to avoid the statutory limitation. *Cundiff v. Unsicker*, 118 Ill. App. 3d 268, 272 (1983); *Blair v. Blondis*, 160 Ill. App. 3d 184, 188 (1987) (explaining that a plaintiff seeking to come within the discovery rule exception to the limitations period has the burden of proving the date of discovery).

¶ 24    An appeal from a section 2-619 dismissal requires the same analysis as an appeal following a grant of summary judgment; in both instances, "the reviewing court must ascertain whether the existence of a genuine issue of material fact should have precluded the dismissal, or absent

such an issue of fact, whether dismissal is proper as a matter of law." *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 178 (2007). In making this determination, we apply a *de novo* standard of review. *O'Toole v. Chicago Zoological Society*, 2015 IL 118254, ¶ 16. Under the *de novo* standard, we perform the same analysis that a trial court judge would perform. *FirstMerit Bank, N.A. v. Soltys*, 2015 IL App (1st) 140100, ¶ 13.

¶ 25    In the instant case, plaintiff sued defendants for legal practice, claiming that the decedent's settlement of his workers' compensation or occupational diseases case against Nicor was insufficient. Section 13-214.3 of the Code sets forth the statute of limitations for a legal malpractice action and provides that

> " '[a]n action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.' " *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 14 (quoting 735 ILCS 5/13-214.3(b) (West 2008)).

¶ 26    The statute of limitations incorporates the " 'discovery rule,' " which delays the commencement of the two-year statutory period until the injured party "knows or should know facts that would cause him to believe that his injury was wrongfully caused." *Romano v. Morrisroe*, 326 Ill. App. 3d 26, 28 (2001). "The limitations period in a legal malpractice case begins to run from the time the injured party knows or reasonably should know that he has suffered an injury which was wrongfully caused." *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93, 98 (2005). "Although that time is normally a question of fact, a court may decide the issue as a matter of law where the facts are undisputed and only one conclusion may be drawn from them." *Trogi*, 362 Ill. App. 3d at 98. The statute of limitations does not require that the injured party acquire actual knowledge of negligent conduct before; rather, the statutory period will begin once an injured party has a reasonable belief that the injury was caused by wrongful conduct thereby creating an obligation to inquire further on that issue. *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 673 (1997). It is not required that plaintiff knew or should have known of both the injury and negligent conduct since such a standard is beyond the comprehension of the ordinary lay person to recognize and assume a conclusion that must await legal determination. *Dancor International*, 288 Ill. App. 3d at 673 (citing *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 170-71 (1981)). "A person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 23. Once a party knows, or reasonably should know, both of his injury and that the injury was wrongfully caused, the injured person has the burden to inquire further as to the existence of a cause of action. *Castello v. Kalis*, 352 Ill. App. 3d 736, 745 (2004). "For purposes of a legal malpractice action, a client is not considered to be injured unless and until he [or she] has suffered a loss for which he [or she] may seek monetary damages." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005).

¶ 27    In the instant case, the decedent sued the Daniels and Marks defendants for their handling of his workers' compensation or occupational diseases case, which resulted in a settlement that was approved by an arbitrator on October 25, 2011. The settlement's final approval marked the

end of the decedent's case against Nicor, including all claims for temporary total disability benefits and unpaid medical expenses. At that point, the decedent's alleged injury accrued, and we cannot say that the decedent did not know, or should not have known, that the settlement was inadequate. At the time of the settlement, the decedent had not been working for nearly eight years, during which time he had received only 11 weeks of extended benefit account payments and no temporary total disability benefits at all. Under the Workers' Compensation Act or the Workers' Occupational Diseases Act, an employee injured or exposed to a dangerous chemical during the course and scope of their employment would be entitled to weekly temporary total disability benefits and medical expenses, and a lawyer can obtain those payments by the filing of a section 19(b-1) and section 8(a) petition. 820 ILCS 305/8(a), 19(b-1) (West 2006).

¶ 28    The decedent claimed in his complaint that, due to his loss of income, he did not have enough money to pay for his medical treatment and family expenses. Before he took a leave of absence, the decedent earned a salary of more than $100,000 per year with an average weekly wage of $1800. The settlement, however, paid only one lump sum of $125,000, of which the decedent received $98,291.55. The settlement order stated that the payout to the decedent, when factoring in his remaining life expectancy of 28 years, would result in the equivalent of $67.51 per week for the rest of his life. It was clear in the settlement order that the decedent was receiving an amount of money that was less than 1 year of his previous Nicor salary to compensate him for nearly 8 years of back pay and 28 years of future income and disability that he was claiming he was entitled to, including unpaid medical expenses.

¶ 29    Moreover, plaintiff claimed that the decedent knew that Nicor had a practice of prolonging workers' compensation and occupational diseases cases in order to force its employees to settle for less money than they should have received. Also, despite defendants' assurances that he did not need to worry about temporary total disability benefits and that he would be compensated at the conclusion of his case, the decedent knew at the time of the settlement that he would not receive any temporary total disability benefits since the settlement order stated that the settlement covered all claims for recovery by the decedent against Nicor, including any unpaid temporary total disability benefits. The order also stated that it was "disputed" whether the decedent was ever temporarily totally disabled, which would have indicated to the decedent that his claim for temporary total disability benefits was unresolved before the settlement. Plaintiff also claimed the decedent had discussions with defendant Daniels after the settlement, to which defendant Daniels had to "reassure" the decedent that he would receive additional compensation in the whistleblower lawsuit to compensate for his injuries. As a result, the decedent knew, or should have known, of his injury at the time the settlement order was entered since he was agreeing to accept a sum of money that was substantially less than what he should have received as reasonable compensation after considering his previous salary of over $100,000 and that nearly eight years that had lapsed since he was working, during which he received only 11 weeks of extended benefit account payments. As a result, the decedent had until October 25, 2013, to file his legal malpractice complaint, which he did not actually file until 13 months later on December 30, 2014. As a result, the trial court did not err when it granted the defendants' motion to dismiss.

¶ 30    Plaintiff argues that the decedent did not know of his injury because he relied on defendant Daniels's assurances on multiple occasions after the settlement that he would receive additional compensation for his injuries from the whistleblower case and that the decedent

- 9 -

believed that defendant Daniels was protecting his interest in "both litigations." Plaintiff also argues that the decedent did not in fact discover his injury until he consulted a new attorney in 2014 concerning defendants' handling of the whistleblower case, where he learned that the workers' compensation and/or occupational diseases settlement was far below what he should have received, that he was in fact eligible for temporary total disability benefits, and that defendants Marks and Daniels mishandled his case. However, all these facts were apparent to the decedent at the time of the settlement or at least he should have known that something was wrong and investigated defendants' handling of his case.

¶ 31     Further, the assurances by defendant Daniels concerning further compensation related to the whistleblower case only. At that point in time, the workers' compensation or occupational diseases case was over and the decedent was aware of the outcome; the fact that he expected more money in a different lawsuit had little bearing on the professional negligence that may have occurred in the prior action. Also, "[t]he discovery rule may be employed where 'uncertainty exists as to the fact of damage' but not where uncertainty exists only as to the amount of damage." *Belden v. Emmerman*, 203 Ill. App. 3d 265, 270 (1990) (quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 199 Ill. App. 3d 728, 734 (1990), *rev'd*, 158 Ill. 2d 240 (1994)). At the time of the settlement, the decedent was depending on receiving additional compensation in the whistleblower lawsuit, but whether he would ultimately receive that extra money would only mitigate the damage that occurred from the insufficient settlement. The *fact* that the decedent was damaged by the insufficient settlement was known as soon as the settlement was approved, but the uncertainty of additional funds from another lawsuit would have only lessened the *amount* of damage caused by the insufficient settlement.

¶ 32     Plaintiff heavily relies on *Trogi*, 362 Ill. App. 3d 93, to support his claim that the complaint was timely. In *Trogi*, the plaintiff client hired the defendant attorney to represent him in the purchase of real estate from his daughter. *Trogi*, 362 Ill. App. 3d at 94. The attorney told the plaintiff that the deed was recorded in Lake County and mailed him a copy; however, the deed should have been recorded in Cook County. *Trogi*, 362 Ill. App. 3d at 94. Five years later, the daughter sold her interest in the property to a third party, and that deed was recorded in Cook County. *Trogi*, 362 Ill. App. 3d at 94. Since the attorney did not properly record the initial deed, the plaintiff's interest did not appear in the title search, which resulted in the loss of the plaintiff's interest in the property. *Trogi*, 362 Ill. App. 3d at 94-95. The plaintiff sued the defendant attorney for legal malpractice, but the trial court dismissed the case, finding that the complaint was not filed within the two-year statute of limitations. *Trogi*, 362 Ill. App. 3d at 94-95. On appeal, the appellate court reversed, finding that plaintiff did not become aware of the recording error until the deed was conveyed to the third party. *Trogi*, 362 Ill. App. 3d at 98-99. The appellate court found that, even if the plaintiff had noticed where the deed was recorded, that fact did "not lead to the conclusion that a layperson who hired an attorney to represent him in a real estate transaction knew or understood the recording requirements or implications." *Trogi*, 362 Ill. App. 3d at 99.

¶ 33     In the instant case, plaintiff argues that the decedent likewise relied on the advice of his attorneys and that, since he was a lay person, he could not have been expected to know what the requirements for receiving temporary total disability payments were, what a reasonable settlement amount would be, or whether he could have received more money by taking the case to a hearing. However, *Trogi* is distinguishable because, in that case, the plaintiff was not expected to understand the complex deed recording process. Here, the deficiency of the

- 10 -

settlement amount was obvious to even a lay person at the time of the settlement just considering the bottom line—that the decedent was receiving less than one years' worth of his previous salary to compensate him for nearly eight years of back pay, medical expenses, and permanent disability. Therefore, the decedent, even if he lacked legal expertise, was aware that his settlement amount was insufficient, which would have at least put him on notice to investigate whether his attorneys were negligent. As a result, the statute of limitations was not tolled since the decedent was aware of his injury at the time the settlement order was entered, and the trial court did not err when it dismissed the legal malpractice complaint as untimely.

¶ 34                          II. Equitable Estoppel

¶ 35        Plaintiff argues in the alternative that defendants should be estopped from asserting the statute of limitations under a theory of equitable estoppel or fraudulent concealment because the decedent reasonably relied on defendants' misrepresentations, which delayed his discovery of his injury. For the following reasons, we affirm the judgment of the trial court.

¶ 36        A defendant is estopped from asserting the limitations bar if the plaintiff's failure to act within the statutory period results from reasonable reliance on the defendant's conduct or representations. *Witherell v. Weimer*, 118 Ill. 2d 321, 330 (1987). "To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel has been prejudiced by his or her reliance on the representations." *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 25 (citing *Parks v. Kownacki*, 193 Ill. 2d 164, 180 (2000)). " ' "[I]t is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay. [Citations.] Rather, all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit." ' " *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 252 (1994) (quoting *Witherell v. Weimer*, 85 Ill. 2d 146, 159 (1981), quoting *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir. 1978)).

¶ 37        Under the fraudulent concealment doctrine, the statute of limitations will be tolled if a plaintiff pleads and proves that fraud prevented discovery of a cause of action, and if so, a plaintiff can commence his or her suit at any time within five years after he or she discovers a cause of action. *Carlson*, 2015 IL App (1st) 140526, ¶ 44 (citing *Clay v. Kuhl*, 189 Ill. 2d 603, 613 (2000), and 735 ILCS 5/13-215 (West 2012)). "As a general matter, one alleging fraudulent concealment must ' "show affirmative acts by the fiduciary designed to prevent the discovery of the action." ' " *Carlson*, 2015 IL App (1st) 140526, ¶ 44 (quoting *Clay*, 189 Ill. 2d at 613, quoting *Hagney v. Lopeman*, 147 Ill. 2d 458, 463 (1992)). A plaintiff must show " 'affirmative acts or representations [by a defendant] that are calculated to lull or induce a claimant into delaying filing his [or her] claim or to prevent a claimant from discovering his [or her] claim.' " *Carlson*, 2015 IL App (1st) 140526, ¶ 44 (quoting *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 257 (1998)).

¶ 38    However, it is well-established that the basis of a legal malpractice action also cannot constitute the grounds for equitable estoppel; there must be some misrepresentation by the defendant that the plaintiff relied on to his or her detriment to prevent the filing of a legal malpractice action. *Koczor v. Melnyk*, 407 Ill. App. 3d 994, 1000 (2011) (citing *Barratt*, 296 Ill. App. 3d at 257-58 ("the allegedly fraudulent statements or omissions that form the basis of the cause of action may not constitute the fraudulent concealment in the absence of a showing that they tend to conceal the cause of action")). In the instant case, none of defendants' assurances or representations to the decedent that plaintiff claims constituted legal practice may be used as grounds to estop defendants from asserting the statute of limitations bar in the instant case. Here, plaintiff claims that defendants Daniels and Marks committed malpractice when they told the decedent that his workers' compensation or occupational diseases case was progressing and then urged him to accept Nicor's settlement offer, arguing that it was a good offer and that he would receive additional money through the separate whistleblower case. Since plaintiff argues that those assurances are a part of a course of defendants' conduct that amounted to legal malpractice, plaintiff cannot point to those same assurances as grounds for estoppel. See *Koczor*, 407 Ill. App. 3d at 1000.

¶ 39    Moreover, plaintiff also points to one type of assurance after the settlement in which decedent claims that defendant Daniels continued to reassure the decedent on multiple occasions that he would receive money in the whistleblower case in addition to the money he received in the workers' compensation and occupational diseases settlement. First, those assurances are nearly identical to the presettlement assurances of additional compensation in the whistleblower case that plaintiff argues were a part of defendants' mishandling of the decedent's workers' compensation or occupational diseases case, and plaintiff cannot assert those assurances to estop defendants from asserting the statute of limitations. Second, as stated, those assurances are related to a separate lawsuit and have no bearing on the outcome of the workers' compensation or occupational diseases case. At the time defendant Daniels made those assurances, the damage from the insufficient settlement was obvious, and the promise of future compensation from another source did not conceal or misrepresent the fact that the settlement amount was far below what the decedent should have received. Plaintiff does not point to any statements made by defendants to the decedent that misrepresented or concealed material facts that prevented his discovery of his cause of action for his attorneys' mishandling of his workers' compensation or occupational diseases case.

¶ 40    Plaintiff relies on *DeLuna*, 223 Ill. 2d 49, where the plaintiffs, who did not speak English and relied in good faith on their attorney's reassurances, claimed that their attorney failed to reveal material facts; misled them by twice telling them their case was going well when it had, in fact, been dismissed; and failed to disclose facts bearing on the procedural status of the case. *DeLuna*, 223 Ill. 2d at 79-80. The Illinois Supreme Court found that the plaintiff's allegations that their attorney twice misrepresented the status of their case after it had been dismissed were sufficient to meet the pleading requirements for fraudulent concealment. *DeLuna*, 223 Ill. 2d at 81. However, this case is factually distinguishable from the instant case since plaintiff does not allege any assurances that defendants made to the decedent after the settlement that explicitly misrepresented or concealed material facts concerning the workers' compensation or occupational diseases case.

¶ 41    Plaintiff also relies on *Jackson Jordan*, 158 Ill. 2d 240, where the defendant law firm did not advise the plaintiff client of a patent held by a third party in 1973. *Jackson Jordan*, 158 Ill.

2d at 244. In 1975, the third party sued to enforce its preexisting patent, and the law firm unsuccessfully attempted to invalidate the third party's patent over the next 12 years (*Jackson Jordan*, 158 Ill. 2d at 244-47), during which time the law firm repeatedly and incorrectly reassured the client that it would prevail (*Jackson Jordan*, 158 Ill. 2d at 252-53). The Illinois Supreme Court found that the law firm was equitably estopped from asserting the statute of limitations when the client sued in 1988 for the negligent advice it provided in 1973. *Jackson Jordan*, 158 Ill. 2d at 253. Again, this case is distinguishable from the instant case since plaintiff has not pointed to any assurances that defendants made to the decedent after the settlement that explicitly misrepresented or concealed material facts concerning the workers' compensation or occupational diseases case. Whereas defendant Daniels may have assured the decedent that he would receive additional compensation in the whistleblower lawsuit, that did not conceal or misrepresent the plainly obvious fact that the amount of money the decedent received in the settlement was far below what he should have received.

¶ 42   As a result, defendants were not estopped from asserting the statute of limitations, and the trial court did not err when it dismissed plaintiff's legal malpractice lawsuit as untimely.

¶ 43                                          CONCLUSION

¶ 44   For the foregoing reasons, we affirm the judgment of the trial court. The trial court did not err when it granted defendants' section 2-619(a)(9) motion to dismiss plaintiff's legal malpractice lawsuit with prejudice since the decedent did not file his original complaint within the two-year statute of limitations governing legal malpractice actions. 735 ILCS 5/13-214.3 (West 2014).

¶ 45   Affirmed.