2021 IL App (1st) 200848-U
Order filed: March 26, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-20-0848

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| BILL A. BUSBICE, JR., an individual, OLLAWOOD PRODUCTIONS, LLC, a limited liability company, and ECIBSUB, LLC, a limited liability company, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2019 L 11459 |
| TROUTMAN SANDERS, LLP, ROBERT E. BROWNE, JR., Individually, MICHAEL D. FRIEDMAN, Individually, and PAUL L. GALE, Individually, | ) ) ) ) ) ) | Honorable Margaret A. Brennan, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirmed the dismissal of plaintiffs' legal malpractice complaint, finding that it was filed after the relevant two-year limitations period had expired.

¶ 2    Plaintiffs, Bill Busbice, Jr. and his companies Ollawood Productions, LLC and Ecibsub, LLC, filed a three-count legal malpractice action against their former attorneys, defendants,

Troutman Sanders, LLP, and three of Troutman's partners Robert E. Browne, Jr., Michael D. Friedman, and Paul L. Gale. The circuit court granted defendants' motion to dismiss plaintiffs' legal malpractice action pursuant to section 2-619(a)(5) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2018)), finding the claims time-barred under section 13-214.3(b) of the Code (735 ILCS 5/13-214.3(b) (West 2018)). Plaintiffs appeal. We affirm.[1]

¶ 3       We set forth the pleadings in detail because the facts alleged therein and the various attachments to those pleadings are dispositive to the circuit court's disposition of the motion to dismiss and to our resolution of the appeal.

¶ 4       In their legal malpractice action filed on October 16, 2019, plaintiffs alleged that beginning in April 2013, a group of co-conspirators, led primarily by Steven J. Brown, James David Williams, and Gerald Seppala approached Busbice and held themselves out as experienced film industry insiders who had deals in place to fund the production or marketing of three feature films, *Made in America*, *The Letters*, and *Left Behind*. One or more of the co-conspirators falsely represented that they had already invested millions of their own monies on each film, that more capital was needed, and that plaintiffs could take advantage of the "lucrative deal" by investing their own money. Pursuant to these representations, plaintiffs invested about $5 million with the co-conspirators.

¶ 5       The co-conspirators subsequently informed Busbice of an opportunity to invest an additional $2 million in a fourth film, *Angels Sing*. In October 2013, plaintiffs retained defendants based on their expertise in entertainment law, to investigate and obtain documentation regarding

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

the investments that plaintiffs had already entered into with the co-conspirators, and to "perform a due diligence for any further investments." As part of their due diligence, defendants were to verify that the co-conspirators were actually investing their own money in each of the films in which they asked plaintiffs to invest.

¶ 6    Defendant Friedman requested that the co-conspirators provide documents showing the existence of a bank account holding the funds that Williams claimed to have invested in *Angels Sing*. On October 29, 2013, Williams' attorney, Barry Reiss, sent Friedman a purported October 28, 2013, screenshot of a Chase bank account showing a balance of $1,903,150.24. The first page of the screen shot shows an account name of "Moment Factory, LLC." The second page shows a different account name, "Luxe One, Inc." Friedman failed to immediately recognize the "obvious" discrepancy in the account names, failed to request any actual bank statements, and failed to contact Chase to verify the existence of the account. Despite the obvious phoniness of the Chase screen shot, neither Friedman nor any of the other defendants informed plaintiffs that the documentation provided by Williams was incomplete or false nor did they advise plaintiffs against making any additional investments with the co-conspirators. Accordingly, plaintiffs invested $2 million with the co-conspirators into *Angels Sing* as well as an additional $4 million into *The Letters*.

¶ 7    Plaintiffs alleged that defendants learned in the Spring of 2014 that the co-conspirators had "swindled" plaintiffs out of a total of almost $11 million by "using fake bank records, fake agreements, fictitious people, and scores of audacious lies and misrepresentations" to induce them to invest in the bogus films.

¶ 8    Defendants recommended that plaintiffs file a lawsuit against the co-conspirators in federal court in California and sent Busbice three draft complaints. On May 28, 2014, defendants filed a

complaint on behalf of plaintiffs against the co-conspirators in the United States District Court for the Central District of California alleging violations of federal securities law, common law fraud, and conspiracy to defraud.

¶ 9    On September 10, 2014, defendants filed a complaint on behalf of plaintiffs against Barry Reiss, Williams' attorney, alleging violations of federal securities laws, common law fraud, conspiracy to defraud, and aiding and abetting fraud and conversion. Defendants emailed Busbice a draft of the complaint the day before and asked him to review it; Busbice responded the same day, stating "it is the truth and the way it happened so I agree that we should file ASAP."

¶ 10    Plaintiffs entered into a settlement agreement with the co-conspirators and with Reiss on July 30, 2015, pursuant to which two of the co-conspirators, Williams and Brown, were to pay plaintiffs $4.2 million. Williams and Brown did not make the requisite payments and plaintiffs subsequently obtained a judgment on February 12, 2016, against all the co-conspirators in the amount of $10.9 million on which they have collected about $3.3 million.

¶ 11    On November 15, 2016, defendants filed a complaint on behalf of plaintiffs against another of the co-conspirators' attorneys, Adrian Vuckovich, alleging civil conspiracy, negligence, breach of fiduciary duty, and aiding and abetting fraud, conversion, and fraudulent transfers. The case against Vuckovich was ultimately transferred to the Northern District of Illinois. The jury returned a verdict in favor of Vuckovich and against plaintiffs on December 14, 2018.

¶ 12    Plaintiffs subsequently filed their legal malpractice action against defendants in October 2019. Count I alleged that Friedman committed legal malpractice by failing to: immediately discover that the screen shot of the Chase account sent to him by Reiss was phony; contact Chase to verify the existence of the account; and conduct competent due diligence. Count II is against the law firm Troutman Sanders, LLP as *respondeat superior* for Friedman's alleged negligence.

Count III is against all defendants and alleges that they should not have pursued the (ultimately unsuccessful) case against Vuckovich which cost plaintiffs thousands in additional legal fees. Plaintiffs allege that defendants instead should have adequately explained Friedman's negligence in failing to discern the phoniness of the Chase account screen shot such that plaintiffs could then have made a more "informed" decision regarding the proper party to sue; in effect, count III alleges that defendants committed legal malpractice by failing to inform plaintiffs of the facts of their negligence so that plaintiffs could sue them.

¶ 13    On January 16, 2020, defendants filed a section 2-619(a)(5) motion to dismiss plaintiffs' legal malpractice action, arguing that it was time-barred by section 13-214.3(b) of the Code (735 ILCS 5/13-214.3(b) (West 2018)). Section 13-214.3(b) states in pertinent part:

> "An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." *Id.*

¶ 14    Defendants cited *Carlson v. Fish*, 2015 IL App (1st) 140526, which held that section 13-214.3(b) incorporates the "discovery rule," pursuant to which the two-year statute of limitations begins to run when plaintiff has a reasonable belief that his injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue. *Id.* ¶ 23. To be considered injured, a legal client must suffer a loss for which he may seek monetary damages. *Id.* Knowledge that an injury has been wrongfully caused does not mean that plaintiff has actual knowledge of the alleged malpractice or that he knows of a specific defendant's negligent conduct or of the existence of a cause of action. *Id.* Instead, plaintiff knows or should know that his injury was wrongfully caused when he possesses sufficient information about the injury to put a reasonable person on inquiry to

determine whether actionable conduct was involved. *Id.* Once plaintiff knows or reasonably should know of his injury and that it was wrongfully caused, the burden is on him to inquire further as to the existence of a cause of action. *Id.*

¶ 15    Defendants argued that the two-year statute of limitations began to run no later than May 2014, when plaintiffs (represented by defendants) filed their complaint alleging fraud and other wrongdoing against the co-conspirators in federal court in California based on Reiss's email of the phony Chase screenshot which plaintiffs relied on to invest millions of dollars in "bogus" films. Defendants contended that the following evidence showed that as of the May 2014 complaint, plaintiffs were aware that they had been injured and that the injury was wrongfully caused, creating an obligation to inquire further as to whether they had a cause of action for legal malpractice and triggering the statute of limitations: (1) Busbice's victim impact statement in a related criminal sentencing proceeding against one of the co-conspirators in which he stated that plaintiffs filed the May 2014 complaint only after his "accountants and lawyers demonstrated to me beyond all possible doubt that I had been swindled"; and (2) Busbice's sworn declaration filed in the California district court stating that in May 2014, he discovered that the "purported bank record provided by Reiss to Mr. Friedman on October 29, 2013 was false." Defendants argued that as this evidence showed that the two-year statute of limitations began running in May 2014, plaintiffs' legal malpractice action was required to be filed by May 2016. However, plaintiffs did not file their legal malpractice action until October 2019, well beyond the statute of limitations.

¶ 16    Defendants alternatively argued that even if plaintiffs were not aware of their injury and its wrongful cause in May 2014, they would have been aware of it (thereby triggering the running of the limitations period) either as of September 2014 when they filed the lawsuit against Reiss in federal court in California, or as of November 2016, when they filed their lawsuit against

Vuckovich. Under either scenario, the limitations period expired prior to plaintiffs' filing of the legal malpractice action in October 2019.

¶ 17    On March 20, 2020, plaintiffs filed their response to defendants' section 2-619(a)(5) motion to dismiss, arguing that defendants should be equitably estopped from raising the statute of limitations defense. Plaintiffs cited in support *Hanmi Bank v. Chuhak & Tecson, P.C.*, 2018 IL App (1st) 180089, which held that to demonstrate equitable estoppel barring a statute of limitations defense, plaintiff must show: (1) defendant misrepresented or concealed material facts; (2) defendant knew at the time the representations were made that they were untrue; (3) plaintiff did not know that the misrepresentations were untrue when they were made and acted upon; (4) defendant intended or reasonably expected that plaintiff would act on the misrepresentations; (5) plaintiff reasonably relied on the misrepresentations in good faith to his detriment; and (6) plaintiff was prejudiced by his reliance on the misrepresentations. *Id.* ¶ 23.

¶ 18    Plaintiffs argued that all the elements of equitable estoppel were met here. First, plaintiffs contended that defendants affirmatively misrepresented that the co-conspirators and their attorneys were the only possible persons to sue in connection with the phony Chase screenshot and neglected to disclose facts showing their own liability for their legal malpractice in failing to conduct due diligence and discern that the screenshot was fake. Plaintiffs also contended that defendants concealed that the facts of their legal malpractice created a conflict of interest with them and failed to recommend that plaintiffs hire independent counsel. Plaintiffs argued that defendants' concealment and misrepresentations were done knowingly and with the intent for plaintiffs to rely thereon. Plaintiffs contended that they relied upon the concealment and misrepresentations to their prejudice, as they have been denied the right to recoup their losses stemming from defendants' legal malpractice.

¶ 19    Plaintiffs filed an affidavit from Busbice, in which he attested that he was represented by defendant Troutman Sanders, LLP from September/October 2013 through August 2019, that he relied on their advice and counsel, and that he was not represented by any other attorneys during that time frame. After defendants discovered the co-conspirators' fraud in the Spring of 2014, Busbice "placed the control and direction of any investigation into their hands, never knowing or understanding that [he] might or could seek advice about Troutman's conduct or omissions." Defendants directed Busbice to sue the co-conspirators and their attorneys and told him that they were the only individuals and entities from whom he could possibly obtain recovery for his loss. Defendants never informed him that he should seek independent counsel.

¶ 20    On May 1, 2020, defendants filed a reply in support of their section 2-619(a)(5) motion to dismiss, arguing that plaintiffs' claim of equitable estoppel fails because it was not pleaded in the complaint and because an attorney has no affirmative obligation to advise a client to sue him for legal malpractice. Defendants also argued that the estoppel argument fails because contrary to plaintiffs' contention that Busbice never consulted independent counsel due to defendants' misrepresentations and omissions, Busbice consulted with several other professionals in investigating and/or determining how to remedy the co-conspirators' fraud, including: (1) Al Lippman, Busbice's attorney and father-in-law; and (2) an independent forensic accountant, Joan Martin, and her firm. Defendants attached several exhibits showing the attorney-client relationship between Busbice and Lippman, including: an email dated April 5, 2013, from Lippman to the co-conspirators identifying himself as Busbice's counsel and requesting a meeting regarding his possible investments with the co-conspirators; a letter dated June 28, 2013, from Lippman to counsel for one of the co-conspirators, referring to Busbice as his "client" and discussing Busbice's proposed investment in *The Letters*; and a letter dated April 14, 2014, from Friedman to Chase,

referencing Lippman as his co-counsel and requesting certain banking information related to plaintiffs' investments in *Angels Sing* and *The Letters*.

¶ 21    Defendants further argued that plaintiffs' claim of equitable estoppel failed because they had the knowledge of the true facts of defendants' legal malpractice within the limitations period. Defendants cited in support Friedman's affidavit with attached emails showing that on April 17, 2014, at 2 p.m. Friedman sent an email to Busbice and Lippman, with an attachment of the phony Chase screenshot, and wrote, "[c]an anyone explain to me why this bank statement of Moment Factory, LLC (Acct. ending in 2853) lists the name Luxe One, Inc. on the top of the second page???" Lippman emailed Busbice, Friedman, and Joan Martin at 4:40 p.m. that the screenshot "is what it appears to be a sham!"

¶ 22    Defendants argued that Friedman's affidavit and attached email chain shows that as of April 17, 2014, plaintiffs were made aware that: the co-conspirators had defrauded them via the "sham" Chase screenshot; the "sham" was easily discoverable because the first and second pages of the screenshot listed different owners of the Chase bank account; defendants had failed to discover the sham prior to plaintiffs' investment of millions of dollars in *Angels Sing* and *The Letters*; and defendants had thereby committed malpractice by failing to perform the due diligence that would have uncovered the sham and prevented plaintiffs from being defrauded. As plaintiffs were made aware of defendants' legal malpractice on April 17, 2014, the statute of limitations began to run on that date and plaintiffs' claim of equitable estoppel fails.

¶ 23    Defendants also cited *Brummel v. Grossman*, 2018 IL App (1st) 162540, which held that "it is well-established that the basis of a legal malpractice action also cannot constitute the grounds for equitable estoppel; there must be some misrepresentation by the defendant that the plaintiff relied on to his or her detriment to prevent the filing of a legal malpractice action." *Id.* ¶ 38.

Defendants argued that plaintiffs' claim of equitable estoppel should be rejected because it constitutes the same grounds as count III of the legal malpractice complaint.

¶ 24    Plaintiffs filed a sur-response, again arguing for the application of equitable estoppel to preclude the raising of the statute of limitations defense based on defendants' failure to inform them of facts of their legal malpractice and of the need to obtain independent counsel. Plaintiffs attached a new affidavit from Busbice in an attempt to refute defendants' assertion that Lippman was hired as independent counsel to investigate and remedy the co-conspirators' fraud. Busbice attested in the affidavit that he never retained Lippman to pursue the persons responsible for the injuries suffered as a result of the co-conspirators' fraud.

¶ 25    On July 10, 2020, the circuit court entered an order granting defendants' section 2-619(a)(5) motion to dismiss with prejudice, finding that plaintiffs were aware they had been defrauded by the co-conspirators no later than May 2014, putting them on inquiry to determine whether actionable conduct by their attorneys was involved and triggering the two-year statute of limitations. Plaintiffs' legal malpractice complaint, filed in October 2019, was therefore untimely. Plaintiffs appealed.

¶ 26    A section 2-619(a)(5) motion to dismiss asserts that the plaintiff's complaint is untimely. In a section 2-619 motion, the parties may ask the court to consider the pleadings, as well as any affidavits and deposition evidence and to take judicial notice of facts contained in public records. *Advocate Health and Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). The court must construe all the pleadings and supporting materials in the light most favorable to defendant. *Id.* An appeal from a section 2-619 dismissal requires the same analysis as that for summary judgment, namely, we must determine whether the existence of a genuine issue of

material fact should have precluded the dismissal, or absent such an issue of fact, whether dismissal is proper as a matter of law. *Brummel*, 2018 IL App (1st) 162540, ¶ 24. Our review is *de novo*. *Id.*

¶ 27    *Carlson v. Fish*, 2015 IL App (1st) 140526, and *Nelson v. Padgitt*, 2016 IL App (1st) 160571, are informative as to whether the circuit court erred here in granting defendants' section 2-619(a)(5) motion to dismiss. In *Carlson*, plaintiff founded an options trading company with two partners in 2002. *Id.* ¶ 6. In 2006, plaintiff had a falling out with his partners and retained defendants to represent him in the dispute. *Id.* ¶ 7. Plaintiff and his partners entered into mediation on February 13, 2008, which resulted in plaintiff agreeing to sell his interest in the company for $17.5 million. *Id.* ¶ 8.

¶ 28    Beginning in September 2008, and continuing through November 13, 2008, plaintiff sent numerous emails to defendants expressing his dissatisfaction with the amount he had received for his partnership interest and stating his belief that his former partners had tricked him into taking less money than he was entitled to and may have engaged in fraud. *Id.* ¶ 9.

¶ 29    On November 19, 2008, plaintiff met with attorneys from the law firm of Drinker, Biddle & Reath, LLP, who raised questions about whether defendants' legal services in connection with the settlement agreement had been substandard. *Id.* ¶ 16. According to plaintiff, this was the first time he was made aware of a possible claim against defendants. *Id.*

¶ 30    Plaintiff filed a legal malpractice complaint against defendants on November 18, 2010. *Id.* ¶ 17. The circuit court granted defendants' section 2-619(a)(5) motion to dismiss, finding that the cause of action accrued when plaintiff knew he had been injured and had identified his former partners as the cause, which was no later than November 12 or 13, 2008. *Id.* ¶ 19. Because plaintiff's legal malpractice complaint was filed on November 18, 2010, more than two years after it had accrued, the circuit court found it was untimely under section 13-214.3(b) of the Code. *Id.*

¶ 31    On appeal, we noted that section 13-214.3(b) incorporates the discovery rule and we set forth the parameters of that rule as discussed earlier in this order; in particular, we determined that the limitation period runs when plaintiff has a reasonable belief that his injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue as to whether legal malpractice was involved. *Id.* ¶ 23. We affirmed the circuit court's dismissal order, finding that the emails from September, October, and November 2008 as well as certain judicial admissions showed that plaintiff was aware he had been wrongfully injured by his former partners no later than November 13, 2008, (and probably as early as September 2008). We held:

"even though he may not yet have known that defendants' representation was partly responsible and that their conduct gave rise to a legal malpractice cause of action, the statute of limitations commenced because [plaintiff] did have knowledge that he was injured and that his injury was wrongfully caused. In short, [plaintiff's] identification of one wrongful cause of his injuries initiates his limitations period as to all other causes, particularly when, as here, he claims his partners engaged in fraud and the defendants failed to protect him from fraud, those claims are inseparable." *Id.* ¶ 39.

¶ 32    In *Nelson*,  plaintiff left his packaging design business, HBN Brandesign, in 2011 to join another company, Launch Creative Marketing and he brought his HBN clients to Launch. *Nelson*, 2016 IL App (1st) 160571, ¶ 3. Plaintiff hired defendants to negotiate his employment agreement with Launch. *Id.* Six months later, on January 19, 2012, Launch fired plaintiff based on a provision in the employment contract allowing for his termination if the revenue collected from his prior clients totaled less than $250,000 over the first six months of employment (the six-month provision). *Id.* ¶ 4.

¶ 33    On October 31, 2012, plaintiff sued Launch for breach of contract and fraud. *Id.* ¶ 5. The court granted summary judgment in Launch's favor on December 4, 2014. *Id.* ¶ 6. On July 7, 2015, plaintiff sued defendants for legal malpractice, alleging that they failed to tell him that the employment agreement they negotiated provided that he could be fired after six months if the revenue from his former customers fell short of the specified target. *Id.* ¶ 7. The circuit court dismissed plaintiff's complaint with prejudice because it was filed past the two-year limitations period *Id.* ¶ 8.

¶ 34    We affirmed, finding that plaintiff should have known of his injury and its wrongful cause by January 19, 2012, when he was fired and informed in writing that his termination was pursuant to the six-month provision in the employment agreement negotiated for him by defendants. *Id.* ¶ 15. Pursuant to *Carlson*, plaintiff's knowledge of a wrongful cause of his injury initiated the two-year limitations period for bringing a malpractice claim. *Id.* ¶ 19. Therefore, plaintiff's legal malpractice action, which was not filed until July 7, 2015, was untimely as it was brought more than two years after January 2012. *Id.* ¶ 15. We further noted that even if plaintiff did not know of his injury and its wrongful cause on January 19, 2012, he should have known by October 31, 2012, when, with the assistance of a new attorney, he filed suit against Launch based on the termination and the text of the employment agreement. *Id.* ¶ 16. Assuming that the limitation period did not begin to run until October 31, 2012, it had still expired before plaintiff filed his legal malpractice action. *Id.*

¶ 35    Similarly, in the present case, there are several dates by which plaintiffs knew or should have known of their injuries and that they were wrongfully caused, creating an obligation to inquire further as to a legal malpractice cause of action and initiating the commencement of the two-year limitations period. The first such date is April 17, 2014, when Friedman emailed Busbice and

Lippman and disclosed that defendants had failed to discover, prior to plaintiffs' investment of millions of dollars into the films *Angels Sing* and *The Letters*, that each page of the Chase screen shot sent by Reiss and relied on by plaintiffs listed a different account owner. Friedman's email prompted Lippman, who was Busbice's father-in-law and an attorney who had previously represented Busbice in his dealings with the co-conspirators, to send Busbice an email that same day calling the screen shot a "sham." These emails informed plaintiffs not only of the co-conspirators' fraud costing them millions of dollars, but also of defendants' negligence in failing to discern the fraud.

¶ 36    The second date by which plaintiffs knew or should have known that they had been injured and that their injuries were wrongfully caused is May 28, 2014, when defendants filed a lawsuit on plaintiffs' behalf against the co-conspirators in federal court in California, after having sent Busbice three drafts of the complaint containing the allegations of fraud surrounding the emailing of the phony Chase screenshot.

¶ 37    The third date by which plaintiffs knew or should have known that they had been injured and that their injuries were wrongfully caused is September 10, 2014, when defendants filed a lawsuit on plaintiffs' behalf against Williams' attorney, Reiss, after having sent Busbice a copy of the complaint alleging violations of federal securities laws, common law fraud, conspiracy to defraud and aiding and abetting fraud and conversion.

¶ 38    The fourth date is February 12, 2016, when judgments totaling $10.9 million were entered against the co-conspirators on the fraud claims.

¶ 39    Regardless of whether plaintiffs' knowledge of their injuries and their wrongful cause occurred by April 17, 2014, or May 28, 2014, or September 10, 2014, or February 12, 2016, the

two-year limitations period would have expired prior to October 16, 2019, when plaintiffs filed their legal malpractice action.

¶ 40    Plaintiffs contend that they could not have known of their injuries and their wrongful cause until December 14, 2018, when an adverse verdict was rendered against them in the litigation against Vuckovich, meaning that their October 16, 2019, legal malpractice complaint was timely filed. Plaintiffs argue that it was not until the adverse jury verdict in the case against Vuckovich that they "realized" their injuries, specifically, that they were not going to recover any damages against Vuckovich arising out of the co-conspirators' fraud and that they were now liable for thousands of dollars in attorneys fees for pursuing such a "worthless" case. Plaintiffs' contention is without merit, because as discussed earlier in this order, they knew or should have known that they had been injured by the wrongful conduct of the co-conspirators on any one of four earlier dates: April 17, 2014, May 28, 2014, September 10, 2014, and February 12, 2016. Such knowledge of their injuries and their wrongful cause placed the burden on them to inquire as to whether defendants had committed legal malpractice and triggered the two-year statute of limitations, which expired prior to the filing of the legal malpractice action.

¶ 41    Plaintiffs argue that *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240 (1994) compels a different result. In *Jackson Jordan*, defendants gave plaintiff erroneous legal advice related to a patent dispute. Defendants advised plaintiff that its plan to manufacture and sell railroad track maintenance equipment would not infringe on any existing patents. *Id.* at 243. However, a similar patent was in fact held by another company, Plasser American Corporation, which brought a patent infringement suit against a competitor of plaintiff, Canron, Inc., in 1975. *Id.* at 244. In the Plasser-Canron litigation, the court ruled in favor of Plasser, finding that Canron had infringed on its patent. *Id.* Plaintiff asked defendants to evaluate the possible impact of that

litigation on its own track maintenance machines. *Id.* Defendants advised plaintiff that Plasser's patent was invalid. *Id.* at 245. Subsequently, on June 28, 1982, Plasser informed plaintiff that its track maintenance machines infringed on Plasser's patent. *Id.* Defendants assured plaintiff that it was not infringing on Plasser's patent and advised plaintiff to bring a declaratory judgment action against Plasser. *Id.* On July 19, 1982, plaintiff filed its declaratory judgment action in federal district court against Plasser, which filed a counterclaim for patent infringement. *Id.* On August 8, 1983, the district court ruled in favor of plaintiff on several portions of its complaint. *Id.* at 246. On November 9, 1984, the appeals court vacated the portion of the district court's judgment finding Plasser's patent to be invalid and remanded to the district court, which ruled in February 1986 that a number of plaintiff's models infringed on Plasser's patent. *Id.* at 246-47. On September 22, 1987, plaintiff and Plasser settled the patent infringement dispute, with plaintiff agreeing to pay Plasser $1.9 million. *Id.* at 247.

¶ 42    Plaintiff filed a legal malpractice action against defendants in the circuit court on February 1, 1988. *Id.* The circuit court granted summary judgment for defendants, finding that the five-year limitations period which was then in effect began to run no later than June 28, 1982, the date when Plasser informed plaintiff of its intention to pursue a patent infringement claim, making plaintiff's legal malpractice complaint filed on February 1, 1988, untimely. *Id.* at 248.

¶ 43    The supreme court reversed and remanded, finding that a question of fact existed regarding whether plaintiff first became aware of its injury and its wrongful cause on November 9, 1984,

when the appeals court rendered the first ruling adverse to it; if so, then plaintiff's legal malpractice action was timely filed. *Id.* at 251[2].

¶ 44    *Jackson Jordan* does not compel a finding that the circuit court here erred in dismissing plaintiffs' legal malpractice action on limitations grounds. As we discussed earlier in this order, all the evidence shows that in the instant case, plaintiffs were aware that they had been injured and that the injury was wrongfully caused on any one of four dates: April 17, 2014, May 28, 2014, September 10, 2014, or February 12, 2016. In contrast to *Jackson Jordan*, none of these dates would allow for a finding that plaintiffs' legal malpractice complaint filed on October 16, 2019, was timely.

¶ 45    Next, plaintiffs argue that defendants should be equitably estopped from asserting the two-year statute of limitations because during the limitations period defendants affirmatively misrepresented that the co-conspirators and their attorneys were the only persons who could be sued in connection with the phony Chase screenshot and failed to disclose facts demonstrating their own liability for legal malpractice. Plaintiffs also contend that equitable estoppel applies here because defendants never informed them of the conflict of interest that arose after defendants had committed legal malpractice and never told plaintiffs to seek independent counsel.

¶ 46    Defendants counter that plaintiffs forfeited their equitable estoppel argument by failing to plead it in their legal malpractice complaint. Our review of the record shows that plaintiffs pleaded all the requisite elements of equitable estoppel in their complaint and also raised equitable estoppel

---

[2] The supreme court also found that defendants were equitably estopped from asserting the limitations defense. *Id.* at 251-53. We discuss the equitable estoppel holding later in this order.

in their response and sur-response to defendants' motion to dismiss. Accordingly, we find no forfeiture here.

¶ 47     On the merits, plaintiffs' equitable estoppel argument fails for several reasons. First, a lawyer has no obligation to advise a client of the grounds to sue him for legal malpractice (*Lamet v. Levin*, 2015 IL App (1st) 143105, ¶ 32) and, as such, defendants' failure to inform plaintiffs of their conflict of interest and the grounds for a potential malpractice claim does not amount to the type of concealment or misrepresentation sufficient to toll the statute of limitations. See *Carlson*, 2015 IL App (1st) 140526, ¶ 45 (rejecting plaintiff's claim that the statute of limitations was tolled because defendants had fraudulently concealed their misrepresentation and failed to advise him of their conflict of interest and the possibility that their representation might be materially limited by their personal interests, as defendants had no duty to advise plaintiff of the grounds to sue them for malpractice).

¶ 48     Second, plaintiffs' equitable estoppel argument fails because it is based on defendants' alleged misrepresentations and omissions preventing them from timely discovering and recovering for defendants' legal malpractice, which constitutes the same grounds as count III of the legal malpractice complaint. The basis of a legal malpractice action cannot also constitute the grounds for equitable estoppel. *Brummel*, 2018 IL App (1st) 162540, ¶ 38.

¶ 49     Third, plaintiffs' equitable estoppel argument fails because for the reasons that have been discussed, they had enough information to put them on notice within the limitations period that defendants were potentially subject to a legal malpractice action for failing to perform due diligence sufficient to catch the co-conspirators' fraud. A party claiming equitable estoppel cannot " 'shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then

charge his ignorance to others.' " *J.S. Reimer, Inc. v. Village of Orland Hills*, 2013 IL App (1st) 120106, ¶ 36 (quoting *Vail v. Northwestern Mutual Life Insurance Co.*, 192 Ill. 567, 570 (1901)).

¶ 50    Plaintiffs argue that *Jackson Jordan* and *Hanmi Bank* compel a different result. As discussed earlier in this order, *Jackson Jordan* involved defendants' repeatedly mistaken assurances that plaintiff's railroad track maintenance equipment did not infringe on a competitor's patent. In addition to holding that summary judgment was inappropriately granted for defendants because a question of fact existed with respect to when plaintiffs reasonably could have discovered its injury and its wrongful cause, the supreme court also held that plaintiffs reasonably relied on defendants' constant reassurances that no patent was infringed when forbearing suit and, as such, that defendants were equitably estopped from asserting the statute of limitations defense. *Jackson Jordan*, 158 Ill. 2d at 252-53. The supreme court noted that to invoke the doctrine of equitable estoppel, plaintiff need not show that defendant intentionally misled or deceived it; rather, all that plaintiff needs show is that it reasonably relied on defendant's conduct or representations in forbearing suit. *Id.* at 252.

¶ 51    In *Hanmi Bank*, plaintiff brought a legal malpractice action alleging defendant committed professional negligence when representing it during mortgage foreclosure proceedings, which caused plaintiff to be unable to successfully foreclose on certain properties in Illinois and Wisconsin. *Hanmi Bank*, 2018 IL App (1st) 180089, ¶ 15. The circuit court dismissed plaintiff's complaint on limitations grounds and denied its motion for leave to file an amended complaint asserting that defendant was equitably estopped from raising the statute of limitations as a defense. *Id.* ¶¶ 16-18. We reversed and remanded for plaintiff to file its amended complaint, holding that plaintiff adequately pleaded the elements of equitable estoppel, specifically, that plaintiff delayed filing its legal malpractice complaint while reasonably relying on various misrepresentations

defendant made about the likelihood of plaintiff winning its foreclosure cases on appeal. *Id.* ¶¶ 26-28.

¶ 52      In contrast to *Jackson Jordan* and *Hanmi Bank*, plaintiffs here have failed to show that they delayed filing the legal malpractice action in reasonable reliance on defendants' alleged omissions and misrepresentations; as discussed earlier in this order, plaintiffs had the knowledge and means of discovering the true facts of defendants' legal malpractice within the two-year limitations period and therefore their failure to file their complaint until after the expiration of the limitations period was not reasonable. In the absence of a reasonable reliance on defendants' alleged misrepresentations and omissions excusing the delay in filing the legal malpractice action, plaintiffs' equitable estoppel argument fails.

¶ 53      For all the foregoing reasons, we affirm the circuit court.

¶ 54      Affirmed.