2025 IL App (1st) 231720-U

No. 1-23-1720

Order filed April 17, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| VILLAGE OF HOFFMAN ESTATES, a municipal corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| | ) | No. 21-CH-04888 |
| v. | ) ) | |
| | ) | Honorable |
| NORTHERN ILLINOIS UNIVERSITY FOUNDATION, | ) | Raymond W. Mitchell, |
| a not-for-profit corporation, | ) | Joel Chupack, |
| | ) | Judges Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court granting the defendant Northern Illinois University Foundation's motion to dismiss the complaint with prejudice.

¶ 2    Plaintiff, Village of Hoffman Estates (the Village), filed suit against defendant, Northern Illinois University Foundation (Foundation), seeking an order requiring the Foundation to donate a parcel of land to the Village based on two annexation agreements between the parties. The parties

had entered into an agreement whereby Northern Illinois University (NIU) agreed to establish a branch campus in the Village. In the event NIU did not develop the parcel in the time specified in the agreement, the agreement required the Foundation to convey the parcel to the Village for public use. The parties subsequently entered into a second agreement, which identified a different parcel of land, and contained a different set of terms and conditions.

¶ 3    After NIU did not create the branch campus, the Village demanded that the Foundation donate the new parcel. The Foundation refused, contending that the subsequent agreement between the parties had eliminated the requirement that the Foundation donate any parcel to the Village. The Village brought suit, seeking specific performance of the donation provision in the parties' initial agreement. The circuit court granted the Foundation's motion to dismiss the complaint, finding that the subsequent agreement between the parties did not require the Foundation to donate the parcel to the Village.

¶ 4    The Village now appeals, contending that the court erred in granting the Foundation's motion to dismiss the complaint where the court failed to consider the two agreements as a whole and relied on a single clause in the second agreement in finding that the Foundation was not obligated to convey the parcel. The Village asserts that the court also ignored the public interest element at the heart of municipal annexation agreements, which required the court to consider the interests of residents and taxpayers. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                    I. BACKGROUND

¶ 6    In 1998, the Foundation entered into an agreement with a real estate developer, Shoe Factory Road, LLC (SFR), to build a branch campus of NIU in the Village. As part of the agreement, SFR agreed to negotiate with the Village to allow the approximately 20-acre parcel to

be annexed and developed to allow for the construction of the campus (Old NIU Parcel). To that end, in 1999, SFR entered into an annexation agreement with the Village (the 1999 Agreement) pursuant to section 11-15.1-1 of the Illinois Municipal Code (65 ILCS 5/11-15.1-1 (West 1998)), which permits "[t]he corporate authorities of any municipality [to] enter into an annexation agreement with one or more of the owners of record of land in unincorporated territory."

¶ 7     Under the terms of the 1999 Agreement, the Village would annex and develop approximately 342 acres of vacant land owned by SFR. As relevant here, Article VI "Property Donations, Open Spaces and Wetlands" provided: "[SFR] shall convey, by such instrument as required, that portion of the Property designated NIU property. The terms of the transfer shall be in accordance with the Shoe Factory/NIU agreement; a memorandum of which is attached as Exhibit G. ****." Exhibit A to the 1999 Agreement set forth the legal description for the Old NIU Parcel and Exhibit E set forth the Conditions of Approval (1999 Conditions).

¶ 8     Condition 1c of the 1999 Conditions is titled "NIU Donation Parcel (Parcel 9)" and provides:

> "The approximately 20 acre site that is planned for the future Northern Illinois University (NIU) branch campus shall be donated to the Village of Hoffman Estates at no cost if a building of at least 60,000 square feet for use by NIU is not substantially complete within 10 years after the Village Board approval of this rezoning. No covenant or other limitation shall be placed on the land by the petitioner or any subsequent owner which may limit the Village's use of the land unless specifically approved by the Village by an action of the Village Board."

The agreement to grant and convey between SFR and the Foundation represented that SFR granted the 20-acre parcel as a "charitable tax deductible contribution."

¶ 9 In 2005, the Village, SFR, and the Foundation entered into a second agreement (2005 Agreement). The 2005 Agreement also included another party, a developer named Golf & Rohrssen Limited Partnership (Golf & Rohrssen). Golf & Rohrssen was the owner of a 112.2-acre plot of land named in the 2005 Agreement as the "Laufenburger Parcel." The 2005 Agreement noted that SFR was the owner of the land described in the 1999 Agreement, identified as "Parcels 9 and 10," with the exception of a 20-acre portion of those parcels that had been conveyed to the Foundation. The Agreement identified this 20-acre parcel as the "Old NIU Parcel."

¶ 10 The 2005 Agreement was an amendment to "certain elements and provisions" of the 1999 Agreement, by which Parcels 9 and 10 and the Old NIU Parcel "shall be made subject to this Agreement in all respects, including but not limited to re-setting the term of the [1999 Agreement] *** for a period of twenty (20) years ***." The 2005 Agreement noted that SFR had entered into a contract with Golf & Rohrssen to purchase the Laufenburger Parcel and that the Laufenburger Parcel, Parcels 9 and 10, and the Old NIU Parcel would be developed as provided for in the agreement. The Foundation agreed to deed the Old NIU Parcel to SFR in exchange for SFR deeding a comparably sized parcel to NIU, consisting of a portion of Parcel 10 and a portion of the Laufenburger Parcel. This exchange parcel would be referred to as the "New NIU Parcel" and comprised 20.4176 acres as depicted in an exhibit to the 2005 Agreement.

¶ 11 Attached as an exhibit to the 2005 Agreement was the Agreement to Grant and Convey between SFR and the Foundation. The Agreement to Grant and Convey detailed that the 20.4176-acre New NIU Parcel would consist of a 20-acre portion of the Luafenburger Parcel and a "retained 0.4176-acre portion of the [Old] NIU Parcel."

¶ 12 After NIU failed to build a branch campus on the New NIU Parcel, in May 2021, the Village demanded that the Foundation donate the parcel to the Village. The Foundation refused,

asserting that the original donation provision in the 1999 Agreement that applied to the Old NIU Parcel did not apply to the New NIU Parcel. The Village thereafter filed a two-count complaint seeking an order requiring the Foundation to convey the New NIU Parcel to the Village.

¶ 13     In Count I, the Village raised a claim for specific performance of the donation obligation. The Village contended that the 2005 Agreement did not rescind the Foundation's obligation to convey the New NIU Parcel to the Village in the event the branch campus was not constructed by the agreed date. In Count II, the Village raised an alternative claim for unjust enrichment. The Village asserted that in the event the court determined that the Foundation was not contractually obligated to donate the New NIU Parcel under the agreements, the Village was nevertheless entitled to the return of the parcel because allowing the Foundation to keep the parcel would permit it to be unjustly enriched. The Village noted that the Foundation did not pay for either the Old NIU Parcel or the New NIU Parcel and the Village imparted significant value to both parcels based on its exercise of governmental authority to approve subdivisions and require contributions of real estate as part of the annexation agreements.

¶ 14     The Foundation moved to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)). The Foundation contended that the relief the Village sought was not warranted because the 2005 Agreement "modified" the 1999 Agreement to remove the requirement that the Foundation donate the parcel to the Village. The Foundation asserted that any donation obligations it had in the 1999 Agreement were "superseded" by the 2005 Agreement. Specifically, the Foundation identified Article IX of the 2005 Agreement, which is titled "Fees and Donations." Article IX referred to Exhibit J, which is titled "Plan Commission Conditions of Approval." Subsection 7 of Exhibit J provides:

"All obligations and provisions as set forth in the [1999 Agreement] (including but not limited to road, signal, or other related improvements, and Lindbergh Schoolhouse obligations), shall continue to be obligations under that Agreement in full force and effect, and further those obligations and provisions shall not limit related obligations and provisions under this Annexation and Development Agreement, *except that recaptures, as well as donations and fees to the Village, School District, and Park District shall be in accordance with this Annexation and Development Agreement.* The Commercial Covenant over Parcels 9 and 10 shall be released by the Village." (Emphasis added.)

The Foundation maintained that this provision "controls any obligation to make a donation," and does not provide for or require that the Foundation donate the New NIU Parcel to the Village. The Foundation contended that if the parties intended for the Foundation to donate the New NIU Parcel to the Village, they would have specifically provided for that obligation in this section.

¶ 15    The Foundation further pointed out that the 2005 Agreement contained an Integration and Amendment clause that provided that the agreement set forth all promises and agreements between the parties and that there were no other agreements between the parties. The 2005 Agreement also contained a clause governing conflicts between the text of the agreement and the exhibits. This clause provided that the text of the 2005 Agreement shall control, but that Exhibit J shall control over the text of the agreement. The Foundation maintained that the Village's claim for specific performance must therefore fail because the parties never agreed that the Foundation was required to donate the New NIU Parcel to the Village.

¶ 16    The Foundation also contended that the Village's claims were barred by the statute of frauds and the relevant statutes of limitations. Finally, the Foundation contended that the Village's

claim for unjust enrichment should be dismissed because the Village pled the existence of a written contract between the parties.

¶ 17 In response, the Village asserted that the 2005 Agreement "folded all applicable provisions of the 1999 Agreement into the 2005 Agreement." The Village noted that the Conditions of Approval section of the 2005 Agreement stated that: " 'All obligations and provisions as set forth in the [1999 Agreement] *** shall continue to be obligations under that Agreement in full force and effect ***.' " The Village maintained that nothing in either agreement relieved the Foundation of its obligation to convey the subject parcel to the Village in the event it did not use the parcel to construct a branch campus within the time limitations provided. The Village contended that the court should reject the Foundation's argument that the 2005 Agreement "superseded" the 1999 Agreement and instead should view the 2005 Agreement as an amendment to the 1999 Agreement that preserved the provisions of that original agreement. The Village acknowledged that the 2005 Agreement added new parties, new property, and a new 20-year term, but maintained that the Foundation was still bound by the terms of the 1999 Agreement. The Village asserted that the "construct-or-convey" obligation from the 1999 Agreement was "absorbed" into the 2005 Agreement. The Village maintained that if it intended to relinquish its right to the parcel in the event NIU did not construct a campus within the limitations period, it would have done so explicitly in the 2005 Agreement and the Foundation would have ensured that such relinquishment was clear in the agreement.

¶ 18 The Village contended that the court should reject the Foundation's argument that Article IX governed the donation obligations between the parties because that article solely concerned developer obligations in connection with the overall development of the subdivision. The Village maintained that Article IX and Exhibit J had "nothing to do with the relationship between the

Village and [the Foundation] or the campus," but instead were "bilateral agreements" between the Village and the "Developer." The 2005 Agreement identified SFR as the "Developer."

¶ 19    The Village further asserted that the court should reject the Foundation's statute of limitations argument because it was not appropriate for the court to decide disputed statute of limitations issues on a section 2-619 motion to dismiss. With regard to its claim for unjust enrichment, the Village maintained that it should not be dismissed because it was pled in the alternative in the event the court found that there was no express agreement between the parties to convey the New NIU Parcel.

¶ 20    The court ruled on the Foundation's motion to dismiss in a written order. The court first noted that it was undisputed that the 2005 Agreement constituted an amendment to the 1999 Agreement. The court noted that Exhibit J of the 2005 Agreement provided that all obligations of the 1999 Agreement were to continue under the 2005 Agreement. The court noted, however, paragraph 7 of Exhibit J expressly provided that donations to the Village were excepted from this section. The court found that the language of the 2005 Agreement was clear and unambiguous and therefore it must determine the intent of the parties solely from the plain language of the agreement.

¶ 21    The court determined that the plain language of Exhibit J provided that donations to the Village were to be governed by the 2005 Agreement. The court noted that the parties could have agreed that the Foundation's obligation to convey under the 1999 Agreement was " 'in full force and effect' " along with its other obligations. "Instead, the intent of the parties evidently shown from the language of the term is that donations to the Village are to be in accordance with the terms of the 2005 [A]greement, *not* the 1999 [A]greement." (Emphasis in original.) The court observed that the 2005 Agreement did not obligate the Foundation to donate any parcel to the Village. The court rejected the Village's argument that Article IX addressed only the developer's obligations.

"It simply shows that the parties have agreed on the developer's donation obligations, and it does not change the plain and ordinary meaning of Exhibit J." The court further observed that the 2005 Agreement contained an integration clause, which supported its interpretation that the 2005 Agreement did not impose a contractual obligation on the Foundation to donate the New NIU Parcel. The court therefore dismissed count I of the complaint with prejudice.

¶ 22    The court further found that the Village could not state a claim for unjust enrichment because there was a written contract between the parties and because the claim was time-barred. The court noted the five-year statute of limitations in section 11-15.1-4 of the Municipal Code would bar this claim because the Village's claim for unjust enrichment would have accrued in 2015, and, therefore, would have to have been filed by 2020. The court therefore found that count II could not stand. Accordingly, the court granted the Foundation's motion to dismiss and dismissed the Village's complaint with prejudice.

¶ 23    The Village filed a motion for reconsideration, contending that the 2005 Agreement did not create a "new parcel" because the New NIU Parcel included some acreage from the Old NIU Parcel. The Village maintained that this demonstrated that the Foundation had continuing obligations from the 1999 Agreement that were not extinguished by the 2005 Agreement. The Village further asserted that the court fundamentally misinterpreted the 2005 Agreement by finding that Exhibit J applied to the Foundation when the provisions in that section solely pertained to the Developers of the properties covered by the 1999 and 2005 Agreements. The Village pointed out that the terms "developer," "donations," and "recaptures" are terms of art under the Illinois Municipal Code with specific definitions not applicable to the Foundation. The Village maintained that the language regarding donations in Exhibit J did not apply to the Foundation because it is not

a developer. The Village also pointed out that the court's order failed to specify whether it granted the Foundation's motion to dismiss pursuant to section 2-615 or 2-619 of the Code.

¶ 24    In response, the Foundation asserted that the Village's motion raised new arguments, which was inappropriate in a motion to reconsider where those arguments could have been raised before the court entered its judgment. The Foundation contended that even if the court considered these arguments, the Village's proposed interpretation would require the court to rewrite the parties' agreements which provided that the 2005 Agreement would control all donation obligations and did not require the Foundation to donate the New NIU Parcel. Finally, the Foundation maintained that the court's order adequately set forth the bases for dismissal and there was no requirement that the court state whether the dismissal was pursuant to section 2-615 or 2-619.

¶ 25    The court agreed with the Foundation that the Village's motion for reconsideration raised new legal arguments that the Village could have raised in opposition to the motion to dismiss. The court noted that the Village had not previously argued that that the 2005 Agreement should be reinterpreted because the Foundation was not a "developer." The court found that the Village's motion therefore did not seek to correct an error in the court's application of the law but inappropriately presented new arguments as to why it disagreed with the court's ruling. The court therefore denied the motion for reconsideration.

¶ 26    The Village filed a timely notice of appeal following the court's denial of its motion for reconsideration. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017).

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, the Village contends that the court erred in granting the Foundation's motion to dismiss its complaint where the 2005 Agreement did not eliminate the original donation restriction

on the parcel that was established in the 1999 Agreement. The Village maintains that the trial court misinterpreted one clause in two lengthy annexations agreements and did not consider the two agreements as a whole. The Village asserts that this misinterpretation and disregard for basic contract law not only failed to give effect to the intent of the parties, but also led the court to ignore the public interest element of municipal annexation agreements.

¶ 29                              A. Standard of Review

¶ 30     The Foundation moved to dismiss the Village's complaint pursuant to section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2020) "Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culberston*, 338 Ill. App. 3d 156, 164 (2003). In determining the legal sufficiency of the complaint under either section, we accept as true all well-pleaded facts and we draw all reasonable inferences from those facts in favor of the plaintiff. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 163 (1998). The sufficiency of the complaint under both sections 2-615 and 2-619 is an issue of law, which we review *de novo*. *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 11.

¶ 31                              B. Specific Performance

¶ 32     Count I of the Village's complaint raised a claim for specific performance, seeking an order requiring the Foundation to convey the subject property to the Village.[1] "Generally, a party will

---

[1]The Village did not raise any arguments regarding the circuit court's dismissal of its claim for unjust enrichment in count II of its complaint. The Foundation noted this omission in its appellee brief, contending that the Village had forfeited any arguments with regard to that finding by failing to raise the issue. The Village did not respond to that contention in its reply brief. Accordingly, we find that the Village has forfeited any argument regarding the court's finding that it failed to state a claim for unjust

be entitled to specific performance of a contract for the conveyance of real estate only upon establishing either that the party has performed according to the terms of the contract or that the party was ready, willing and able to perform but was prevented, and thus excused, from doing so by the acts or conduct of the other party." *Omni Partners v. Down*, 246 Ill. App. 3d 57, 63 (1993). Thus, specific performance may be granted only when the parties have a valid and enforceable contract. *Perkins v. Garcia*, 194 Ill. App. 3d 590, 593 (1990). Whether a contract is valid and enforceable and the interpretation of a contract are questions of law subject to *de novo* review. *Id.*; *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18.

¶ 33    We apply the basic rules of contract interpretation when interpreting an annexation agreement. *Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676, ¶ 39. In interpreting a contract, our primary goal is to give effect to the intent of the parties. *Storino*, 2015 IL App (1st) 142961, ¶ 18. In deriving the parties' intent, we will first look to the language of the contract itself, considering the contract as a whole and viewing each provision in light of other provisions. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). When contract language is clear and unambiguous, we will determine the intent of the parties based on the plain and ordinary meaning of that language. *Virginia Surety Co., Inc. v. Northern Insurance Company of New York*, 224 Ill. 2d 550, 556 (2007). "The parties' disagreement on the meaning of a contract term does not, by itself, render that term ambiguous. Rather, ambiguity arises when the language used has more than one reasonable interpretation." *Storino*, 2015 IL App (1st) 142961, ¶ 18. If contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent. *Thompson*, 241 Ill. 2d at 441.

---

enrichment. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in the appellant's brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 34    The Village contends that reading the 1999 Agreement and 2005 Agreement together demonstrates that the parties intended for the Foundation to donate the New NIU Parcel to the Village in the event the NIU did not construct a branch campus on the parcel within the time limitation provided. The Village asserts that the circuit court failed to read these agreements as a whole, instead focusing on a single clause in the 2005 Agreement that the court mistakenly determined applied to the Foundation. In response, the Foundation contends that although the 1999 Agreement required it to donate the Old NIU Parcel to the Village under certain conditions, there was no such provision pertaining to the New NIU Parcel in the 2005 Agreement. The Foundation maintains that the 2005 Agreement explicitly controls all donation obligations between the parties and does not require the Foundation to donate the parcel.

¶ 35                                C. The Two Agreements

¶ 36    Both parties identify various sections and exhibits of the two agreements that they contend support their interpretation of the agreements. First, in the 1999 Agreement, there is Condition 1c of the 1999 Conditions titled "NIU Donation Parcel (Parcel 9)":

> "The approximately 20 acre site that is planned for the future Northern Illinois University (NIU) branch campus shall be donated to the Village of Hoffman Estates at no cost if a building of at least 60,000 square feet for use by NIU is not substantially complete within 10 years after the Village Board approval of this rezoning. No covenant or other limitation shall be placed on the land by the petitioner or any subsequent owner which may limit the Village's use of the land unless specifically approved by the Village by an action of the Village Board."

This is the provision of the 1999 Agreement that requires the Foundation to donate the Old NIU Parcel to the Village if the circumstances described in the provision are not met.

¶ 37    The Foundation identifies several provisions of the 2005 Agreement that it contends demonstrates the parties' intent that the 2005 Agreement would control all donation obligations, that the parties agreed to create a New NIU Parcel that was separate and distinct from the Old NIU Parcel and not subject to the same restrictions as that parcel, and that the Foundation had no obligation to donate the New NIU Parcel to the Village. First, the 2005 Agreement contains an "Integration and Amendment" clause that provides, *inter alia*, that the 2005 Agreement sets forth:

> "all promises, inducements, agreements, conditions, and understandings between the Parties relative to the subject matter hereof and thereof, and there are no promises, agreements, conditions, or understandings, either oral or written, express or implied, between them, other than are herein and therein set forth or otherwise referred to in this Agreement. All exhibits to this Agreement are made a part hereof by this reference thereto."

The 2005 Agreement also contains a conflicts between text and exhibits provision that provides:

> "In the event of a conflict in the provisions of the text of this Agreement and the Exhibits attached hereto, the text of the Agreement shall control and govern, *except that Exhibit J, "Plan Commission Conditions of Approval", shall control and govern over the text of the Agreement \*\*\**." (Emphasis added.)

As set forth above, subsection 7 of Exhibit J to the 2005 Agreement provides:

> "All obligations and provisions as set forth in the [1999 Agreement] (including but not limited to road, signal, or other related improvements, and Lindbergh Schoolhouse obligations), shall continue to be obligations under that Agreement in full force and effect, and further those obligations and provisions shall not limit related obligations and provisions under this Annexation and Development Agreement, *except that recaptures, as well as donations and fees to the Village, School District, and Park District shall be in*

*accordance with this Annexation and Development Agreement*. The Commercial Covenant over Parcels 9 and 10 shall be released by the Village." (Emphasis added.)

¶ 38    In the Village's view, reading these provisions together, the 1999 Agreement established that the Foundation would donate the Old NIU Parcel to the Village if the branch campus was not substantially completed within the terms of the agreement. This obligation was not extinguished by the 2005 Agreement because the 2005 Agreement says nothing regarding the Foundation's donation obligations. The Village asserts that, therefore, the Foundation's donation obligations from the 1999 Agreement remained in effect.

¶ 39    Here, we find the plain language of the two agreements is clear and unambiguous. In the 1999 Agreement, the parties identified a parcel of land, eventually termed the Old NIU Parcel. In that same agreement, the parties provided that parcel of land would be conveyed to the Foundation. If the Foundation did not use the parcel for its intended purpose within the time limitation provided, the Foundation would be required to donate that parcel to the Village for public use.

¶ 40    In the 2005 Agreement, the parties agreed to amend certain provisions of the 1999 Agreement. The Old NIU Parcel was made subject to the 2005 Agreement "in all respects," including re-setting the 10-year term of the 1999 Agreement to a 20-year term. The parties agreed that the Foundation would convey the Old NIU Parcel to SFR in exchange for a comparably sized parcel comprised of different parcels identified in the agreement. The 20.4176 New NIU Parcel retained 0.4176 acre of the original 20-acre Old NIU Parcel. There is no provision in the 2005 Agreement requiring the Foundation to donate the New NIU Parcel to the Village.

¶ 41    In Exhibit J of the 2005 Agreement, the parties agreed that the obligations and provisions as set forth in the [1999 Agreement] would continue to be obligations under that Agreement in "full force and effect." However, Exhibit J made an exception for "donations and fees to the

Village ***," which were to be in accordance with the 2005 Agreement. Thus, under the plain language of the two agreements, the Foundation had an obligation to donate the Old NIU Parcel to the Village under the terms of the 1999 Agreement. Exhibit J explicitly provides that donations to the Village are to be governed by the 2005 Agreement, not the 1999 Agreement. The 2005 Agreement does not provide that the Foundation is obligated to donate the New NIU Parcel to the Village. The Village fails to explain how the provision in the 1999 Agreement that required the Foundation to donate the Old NIU Parcel could be applied to the New NIU Parcel when the New NIU Parcel is a different parcel of land that contains only a small portion of the Old NIU Parcel.

¶ 42     The Village contends, however, that Article IX, and by extension Exhibit J, address only "Developer" obligations. The Village asserts that Article IX represents a bilateral agreement between it and the "Developer" within the larger annexation agreement among all the parties. Thus, the Village maintains that the language concerning donations in that exhibit applies only to SFR, which is identified as the "Developer," not the Foundation.

¶ 43     First, we observe that there is nothing in the plain language of the agreement to support the Village's position that Article IX represents a separate agreement-within-the-agreement between only the Village and SFR. Article IX is titled simply "Fees and Donations," and there is no indication that the provisions in that article do not apply to every party to the 2005 Agreement. Although many of the provisions in that article and in Exhibit J relate to developer obligations, there are also provisions that do not. The plain language of Article IX and Exhibit J show that when the parties intended for a particular provision to apply to the Developer, they would expressly state as such in the language of the provision by using language such as "The Developer shall." This and similar language appears throughout not only Article IX and Exhibit J, but throughout the 2005 Agreement. Notably, however, subsection 7 to Exhibit J does not specify that it is

intended to apply only to the Developer. It instead explicitly states that "[a]ll obligations and provisions" in the 1999 Agreement, not only those applying to the Developer, shall continue in full force and effect "except" that donations to the Village would be in accordance with the 2005 Agreement. In fact, the Village argued in response to the Foundation's motion to dismiss that the donation obligation from the 1999 Conditions was "folded" into the 2005 Agreement by subsection 7 of Exhibit J through that subsection's reference to "[a]ll obligations and provisions" of the 1999 Agreement. Thus, the Village acknowledged that section did not apply solely to SFR as "Developer."

¶ 44    The Village's assertion that terms such as "donation" and "recapture" are terms of art with specific definitions that can only apply to "Developers" is likewise unpersuasive. As an initial matter, the Village raised this contention regarding the specific meaning and application of these terms for the first time in its motion for reconsideration of the trial court's dismissal order. It is well-settled that arguments raised for the first time in a motion for reconsideration are forfeited on appeal. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 134 (2008) ("[A]rguments raised for the first time in a motion for reconsideration in the circuit court are waived on appeal. [Citation]. Because plaintiff failed to raise this argument in her response to defendants' motion to dismiss, she waived her right to assert this issue."). In any event, if the parties are permitted to agree in the 1999 Agreement that the Foundation is obligated to *donate* the Old NIU Parcel to the Village, a provision that has nothing to do with any "developer" obligations, then it follows they should also be permitted to agree the Foundation's donation obligations will instead be governed by the 2005 Agreement.

¶ 45    Finally, the Village maintains that this interpretation ignores the public interest element of municipal annexation agreements and violates the "doctrine of probability or reasonableness" by

ascribing an unreasonable interpretation to the agreements. First, we note that the Village raises both of these arguments for the first time on appeal. It is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica*, 169 Ill. 2d 525, 536 (1996). Nonetheless, as discussed at length above, we find nothing inherently unreasonable about the interpretation of these agreements. Further, while we acknowledge the purpose of annexation agreements, these agreements are still subject to the basic rules of contract interpretation. *Village of Kirkland v. Kirkland Properties Holdings Company, LLC I*, 2023 IL 128612, ¶ 63. We agree that the provisions of the Municipal Code concerning annexation agreements are considered part of the annexation agreements in this case (*id.* ¶ 60), but there is nothing in the agreements that violates the provisions of the statute. "We will not invalidate an agreement on public policy grounds unless it is clearly contrary to what our statutes or court decisions have declared to be public policy, or unless it is manifestly injurious to the public welfare." (Internal quotation marks omitted.) *Cox v. U.S. Fitness, LLC*, 2013 IL App (1st) 122442, ¶ 36. We find neither exception applies in this case.

¶ 46                                    III. CONCLUSION

¶ 47     For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 48     Affirmed.